UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| vs. | : | (JUDGE MANNION) |
| | : | |
| WALTER KENNETH PARFAITE, | : | |
| Defendant | : | NO. 3:21-CR-00056 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DEFENDANT, WALTER KENNETH PARFAITE'S**
**BRIEF IN SUPPORT OF OMBIBUS MOTION FOR PRE-TRIAL RELIEF**

Defendant, Walter Kenneth Parfaite, by his undersigned counsel, submits his brief in support of Defendant's Omnibus Motion for Pre-Trial Relief.

**I.    STATEMENT OF THE CASE**

On March 3, 2021, a grand jury returned a seven-count Indictment against Defendant, Walter Kenneth Parfaite, and Co-Defendant, Matthew Luce.  Count 1 charges the Defendant with conspiracy to distribute and possess with intent to distribute 50 grams or more of a mixture containing methamphetamine, and 100 grams or more of a mixture containing heroin, in violation of Title 21, United States Code, Section 846.  Count 6 charges Defendant with possession with intent to distribute methamphetamine in violation of Title 21, United States Code, Section 841(a)(1).  Count 7 charges Defendant with possession with intent to distribute heroin in violation of Title 21, United States Code, Section 841(a)(1).  The Indictment also contains a forfeiture allegation.  On or about March 12, 2021, Defendant, Walter Kenneth Parfaite, was arraigned before the Honorable Karoline Mehalchick, United States Magistrate Judge, and entered a plea of "Not Guilty" to the charges.  Defendant has filed motions for pre-

1

trial relief comprising a motion for discovery, motion for severance or suppression of Co-Defendant's statements, motion to suppress statements of Defendant, motion for discovery of Co-Defendant and co-conspirator statements, motion for a hearing to determine the existence of a conspiracy (*James* Hearing) and motion to disclose identifying information regarding confidential witnesses.  The within brief is submitted in support of Defendant's pre-trial motions.

II.   **ARGUMENT**

    1.    **THE COURT SHOULD GRANT DEFENDANT'S MOTION FOR DISCOVERY.**

       Defendant has received some discovery from the Government, including a CD containing 125 pages of documents, photographs, and videos from the execution of a search warrant on February 23, 2021, a USB flash drive containing an audio file, digital forensic reports, 12,667 pages of Facebook records and documents from the Monroe County District Attorney's office, and fifty-two pages of additional discovery materials.  However, these discovery requests are necessary because other documents and information critical to Defendant's defense have not been produced by the Government.

       A.    **Defendant is Entitled to Discovery of His Statements.**

       Generally, all the items sought in Defendant's Motion for Discovery are properly discoverable under Federal Rule of Criminal Procedure 16 and the Constitution and laws of the United States.  Discovery of a defendant's statements is specifically provided for in Rule 16(a)(1)(A) & (B).  "It is hardly an overstatement that a lawyer's advice to his client in every stage of a criminal case is, and quite properly should be, dependent upon the contents of the statement given by his client to the government." *United States v. Fancher*, 191 F. Supp. 488, 456, n.17 (D. Conn. 1961).  Knowledge of the contents of the defendant's statement is necessary

to advise the defendant if he should take the stand and testify or exercise his constitutional right of silence. *See, Johnson v. Unites States*, 344 F.2d 163 (D.C. Cir. 1964).

Here, Defendant requests disclosure of any statements, whether oral, written or recorded, made by him in the Government's possession, custody, or control.  This includes (a) all written or recorded statements by Defendant, including statements made by Defendant to any government agents; (b) The substance of all oral statements made by Defendant, whether before or after the Indictment, the Government intends to offer in evidence, whether it's case-in-chief, cross-examination, or rebuttal, in response to interrogation by any person then known to be a government agent; and (c) Any statement, confession, or admission, relating directly or indirectly to the charges, made by Defendant to investigation officers or to third parties.  This request also includes any statement or admission which may have been incorporated into any report, memorandum, transcript, or other document or recording, or handwritten notes prepared by federal, state, or local government agents or attorneys, or by any other person working with such agents or attorneys.

**B.      Defendant is Entitled to Examine the Evidence the Government Intends to Use or Rely Upon at Trial.**

Rule 16(a)(1)(E) authorizes a defendant to inspect and copy or photograph all books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof which are within the possession, custody or control of the government and are material to the preparation of the defense or are intended to be used by the government as evidence in chief at trial or obtained from or belonging to the defendant.  It is unnecessary for the defendant to make a showing of materiality for him to inspect items which the government intends to use as evidence in chief at trial. (Advisory notes to the 1974 Amendment of Rule 16).  Likewise, no specific showing of materiality is required regarding the items obtained from or belonging to the

defendant.  These two classifications are properly deemed "material" without further showing. (Advisory Committee notes to 1974 Amendment of Rule 16).

Here, Defendant requests the opportunity to inspect and photocopy all evidence seized because of any search in this case, including all documents and tangible objects, including clothing, notes, books, papers, documents, and photographs obtained from, or belonging to, the Defendant.  This request includes all books, documents, photographs, or tangible objects seized and taken on or about February 23, 2021, from the search of Room No. 3 of the Paramount Motel, 2220 Milford Road, East Stroudsburg, Pennsylvania 18301, including any police body-worn camera video footage showing the search of the motel room.  The Government has not provided the Return of Service and Inventory for this search.  Defendant moves for production of the Return of Service and Inventory of items seized, and any motel registries and/or guest records seized and taken from the Paramount Motel, and all evidence obtained from the warrantless seizure and search of Amy Beth Gearhart's red Toyota Yaris, bearing Pennsylvania Plate: KSNI540.  Without such basic information, defense counsel cannot determine whether a suppression motion should be filed.

Defendant requests all arrest reports, investigator's notes, memos from arresting officers, dispatch tapes, sworn statements and prosecution reports pertaining to the Defendant or Co-Defendant.  These are available under Fed. R. Crim. P. 16(a)(1)(B) and (C), Fed. R. Crim. P. 26.2 and Fed. R. Crim. P 12(b)(4).  Although defense counsel is aware of the limitations of the Jencks Act regarding the timing of disclosing witness statements, there presumably are numerous relevant reports detailing a prior investigation of the Co-Defendant by Pennsylvania law enforcement agents, and investigative reports from the Monroe County District Attorney's Office.  Such reports are discoverable beyond the scope of *Jencks*; they are exculpatory or

4

impeaching of others, or evidence which the Government may attempt to introduce against the Defendant or Co-Defendant under Fed.R.Evid.404(b). Moreover, Defendant is entitled to all documents reflecting or relating to any photographic identification procedures utilized by government agents, and all photographs, videotapes or other materials used to memorialize the extensive surveillance done in this case.

Defendant requests all documents which the Government intends to use at trial as evidence in its case in chief. Fed. R. Crim. P. 16(a)(1)(E). This includes not only those items marked and offered into evidence, but also those documents relied upon or referred to by any witness called by the Government during its case in chief.

Defendant requests all documents material to preparing the defense. Fed. R. Crim. P. 16(a)(1)(E). This request includes, but is not limited to:

a. Transcripts of and "real time" copies of all audio tape and video tape recordings relevant to the defense, whether made by the Government or private individuals, including:

(i) Any tape-recorded conversations on which the Defendant was recorded;

(ii) Any tape-recorded conversations on which there is any reference to the Defendant; and

(iii) Any tape-recorded conversations of the people who the Government alleges are co-conspirators, including all intercepted conversations or consensually recorded conversations on which the Co-Defendant, Matthew Luce, were recorded.

b. All physical evidence recovered during the Government's investigation.

c. All documents reflecting or relating to the chain of custody of physical evidence, including all suspected controlled substances, recovered during the Government's investigation.

A review of discovery materials discloses law enforcement officers intercepted communications between Co-Defendant, Matthew Luce, and others.  Defendant is entitled to disclosure of all intercepted conversations or consensually recorded conversations involving or pertaining to him or the Co-Defendant.  Defendant specifically moves for tapes of any intercepted conversations or consensually recorded conversations, including tape-recorded conversations between Co-Defendant, Matthew Luce, and Confidential Witness #1, Confidential Witness #2 and/or any third parties, which may be material to the defense as supporting a defense that Defendant was not a member of the conspiracy alleged in the Indictment or had withdrawn from such conspiracy or which may be inconsistent with the testimony of prosecution witnesses or with the theory of prosecution.  Defendant further believes the tape recordings involving cooperating witnesses may disclose the commission of criminal acts by these witnesses and other information which can impeach their credibility.

     C.     **Defendant is Entitled to all Reports of Scientific Tests or Examinations and to Summaries of Expert Witness Testimony.**

Defendant further seeks to discover the results or reports of physical or mental examinations, and of scientific tests or experiments.  Discovery of this material is authorized by Rule 16(a)(1)(F).  Consequently, the Government should be ordered to disclose:

a.     All writing exemplars and handwriting samples of Defendant, opinions of handwriting experts, handwriting or document analysis, and all documents used in such analyses.

b.     All fingerprints and palmprint exemplars, fingerprint samples, comparisons and opinions of fingerprint experts, and all documents that relate to those opinions.

c.     All voice exemplars taken in connection with investigations concerning the tape-recorded conversations requested above.

    d.      All forensic tests performed upon any mobile devices seized or searched by law enforcement, and all digital evidence acquired, recovered, or extracted from all devices, including Kayla Fields' Motorola cellular telephone, Ashely Grimes' Apple iPhone, Matthew Luce's Apple iPhone in a silver case, Amy Gearhart's Samsung cellular telephone and an LG K31 Rebel Smartphone. According to a Digital Evidence Processing Report issued by the Monroe County District Attorney's Office, all these devices, except a Samsung Galaxy mobile phone, were successfully processed; however, the Government has produced no digital forensic reports or extracted data.

    e.      All enhancements of audio or video tape recordings, and copies of any such enhanced recordings.

    f.      All scientific comparisons and tests, including all reports of laboratory analysis of suspected controlled substances recovered during the Government's investigation, including all controlled substances allegedly purchased from Co-Defendant, Matthew Luce, or seized during the February 23, 2021 search of Room No. 3 of the Paramount Motel, 2220 Milford Road, East Stroudsburg, Pennsylvania 18301

At the Defendant's request, the Government must give to the Defendant a written summary of any testimony that the Government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief. Fed. R. Crim. P. 16 (a)(1)(G). Defendant requests disclosure of the name, current address, and telephone number of each witness the Government intends to call who will be offering "expert" testimony, including all forensic scientists, i.e., forensic chemists, fingerprint analysts, digital forensic analysts, document and handwriting experts, and all law enforcement personnel who will offer opinion testimony

regarding methods involved in drug trafficking, quantities of drugs consistent with drug distribution, rather than personal use, and facts supporting a conclusion that a drug conspiracy occurred.  For each witness, the Defendant requests:

    a.      A detailed biography or resume;

    b.      Copies of all documents, records or other materials used in reaching his or her opinion;

    c.      Copies of all computation sheets, work papers, reports, charges, ledgers, rough notes, or other documents prepared by the witness in connection with his or her analysis; and

    d.      The title, case number and court of any case in which the witness has testified.

    **D.**      **Defendant is Entitled to All Evidence Tending to Affect the Credibility of the Prosecution's Case.**

In passing on the Defendant's motion to disclose favorable evidence and impeaching information as to government witnesses, there are constitutional imperatives that cannot be disregarded.  In *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court held that due process requires the prosecution to provide the defense, upon request, with any evidence favorable to the accused which is material either to guilt or punishment. *Id.* at 88, 83 S.Ct. 1197.  In *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), the Supreme Court held that the government's *Brady* obligation to provide evidence to the defense encompasses evidence affecting a government witness' credibility. 405 U.S. at 154.

The Supreme Court in *Giglio* also stated that the *Brady* obligations extended beyond the mere knowledge of the trial prosecutor. *Id.*  In *Giglio*, a prosecutor, other than the one who tried the case, had made a promise of immunity to the key government witness.  The promise of

immunity was not disclosed to Giglio's counsel and Giglio was convicted.  The Supreme Court reversed the conviction.

In its opinion in _Giglio_, the Supreme Court explicitly imposed upon the government the obligation to disclose impeaching information of which government personnel are aware, even though the information is not known to the prosecutors involved in the trial.  The Supreme Court commented:

> "To the extent this places a burden on the large prosecution offices, procedures and regulations can be established to carry that burden and to insure communication of all relevant information on each case to every lawyer who deals with it."

In _United States v. Bagley_, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), the Supreme Court reaffirmed that the prosecutorial duty of disclosure under _Brady_ included the duty to disclose impeaching evidence, which in _Bagley_ were contractual agreements signed by the government's principal witnesses stating that the government would pay money to the witness commensurate with the information furnished during an undercover operation. _Id._ at 671, 105 S.Ct. at 3378.

Based upon Rule 16(a) of the Federal Rules of Criminal Procedure and the principles enunciated by the Supreme Court in the _Brady_, _Giglio_ and _Bagley_ opinions, this Court should require the Government to disclose all the information requested in Paragraph 12(a) through (v), inclusive, of the Defendant's Motion for Discovery.

The Government has advised defense counsel that the evidence against the Defendant consists primarily of testimony from cooperating witnesses or informants.  Informants are untrustworthy, and measures to safeguard criminal trials against their treachery imposes a duty to produce all information casting a shadow on a government witness's credibility. _United States v. Benal-Obeso_, 989 F.2d 331, 33-34 (9th Cir. 1993).  Because the jury's determination of the

Defendant's guilt or innocence will depend upon the credibility and reliability of the government's witnesses, the defense is entitled to a reasonable opportunity to obtain and investigate information that reflects adversely on the reliability, biases, self-interest, truthfulness, and motives of the government's witnesses.

Federal prosecutors routinely ignore the mandate of _Brady_, _Giglio_, and _Bagley_ by their contention that any material falling under the category of "impeachment," regardless of its exculpatory value, need not be disclosed until after witnesses testify.  In so arguing, they mistakenly contend that the Jencks Act, 18 U.S.C.A. § 3500, somehow supersedes the Defendant's Sixth Amendment rights guaranteed by _Brady_.  Given the mass of impeachment material that probably exists, one cannot fathom how the prosecution can claim that virtually no _Brady_ material exists.  There can be no serious dispute over the proposition that _Brady_ encompasses material that "might well alter the jury's judgment of the credibility of a significant prosecution witness." _Perkins v. LeFevre_, 691 F.2d 616, 619 (2d Cir. 1982) (citing _Giglio v. United States_, 405 U.S. 150, 154 (1972)).  Thus, in _United States v. Bagley_, 473 US 667 (1985), the Court stated:

> Impeachment evidence … as well as exculpatory evidence, falls within the Brady rule. Such evidence is 'evidence favorable to an accused,' so that, if disclosed and used effectively, it may make the difference between conviction and acquittal. (Citations omitted).
>
> The Court of Appeals treated impeachment evidence as constitutionally different from exculpatory evidence … This Court has rejected any such distinction between impeachment evidence and exculpatory evidence.

_Id._ at 676.  But the government would set up its own artificial distinction, claiming that only substantively exculpatory evidence is covered by _Brady_, and impeachment materials are governed solely by the Jencks Act.  The government should not be permitted to hide behind the Jencks Act to prevent pretrial disclosure of material covered by both _Jencks_ and _Brady_.  As the

10

district court in *United States v. Gallo*, 654 F.Supp. 463 (E.D.N.Y.), observed:

> [C]ompliance with the Jencks Act discovery schedule does not necessarily satisfy the due process requirements for Brady material … If witness' statements contain material exculpatory to the defendant, due process requires pretrial production under Brady despite the fact that it may be Jencks material as well. *Id.* (citations omitted).

*See also United States v. Poindexter*, 727 F.Supp. 1470, 1485 (D.D.C. 1989) ("Brady imposes duties on the prosecution in addition to those created by the Jencks Act, and … in some cases the same evidence may be subject to both obligations.")  Defendant respectfully requests that any *Brady*/*Giglio* material—and specifically including impeachment material—in the possession, custody, or control of this prosecutorial agency or any sister law enforcement agency that jointly participated in the relevant underlying investigations, be disclosed to defense counsel.

If the Government does not have to immediately disclose favorable *Brady*/*Giglio* evidence and impeaching information as to potential government witnesses, such delayed productions will effectively deny Defendant the fair trial to which he is entitled under the Fifth Amendment to the United States Constitution and his Sixth Amendment right to effective assistance of counsel.  But disclosure of such information before trial, and not under the significant time constraints imposed by *Jencks*, will enable the defense to effectively prepare for trial and to conduct a much more effective cross-examination of cooperating witnesses and advance the truth-finding process. Therefore, the Court should enter an Order granting the production of all items requested in Paragraph 12 (a) through (v), inclusive, of Defendant's Motion for Discovery on file herein.

### E.    Defendant is Entitled to Disclosure of Prior Bad Acts.

Under the Fifth and Sixth Amendments to the United States Constitution, Fed. R. Crim. P. 16(a)(1)(D) & (E), and Fed. R. Evid. 403 and 404(b), Defendant moves for production of "all

evidence of other or similar crimes, wrongs or acts, allegedly committed by Defendant or Co-Defendant, upon which the government intends to rely to prove, <u>inter alia</u>, motive, scheme, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or 'background of the conspiracy.'"

Prior "bad acts" by the defendant (or co-defendant) are the most prejudicial evidence. Among the reasons for this are:

1. The compelling tendency to believe the defendant guilty of the charge merely because he is a likely person to do such acts.

2. The tendency to condemn, not because he is believed to be guilty of the present charge but because he has escaped unpunished from other offenses.

3. The injustices of attacking one necessarily unprepared to demonstrate the attacking evidence is fabricated.  J. Wigmore, Evidence, § 194, pp. 646, 648 (3 Ed.).

Federal Rule of Evidence 404(b) requires the Government to give reasonable notice before trial upon request of its intent to use such evidence. Here, we respectfully submit that reasonable notice requires the Government to give immediate notice because of the pending trial date of October 12, 2021.  Defendant must have access to the information to make appropriate motions to exclude the use of such evidence.

Besides evidence of other crimes and bad acts, Defendant should also be given immediate notice of any statements to be offered by the government under Rules 807 of the Federal Rules of Evidence, including the particulars of the statement and the name and the address of the declarant.  Finally, so the Defendant may prepare for trial, and under Rule 104 of the Federal Rules of Evidence, the government should be directed to furnish him with any statement it intends to offer in its case in chief under Rule 801(d)(2) of the Federal Rules of Evidence, including any statement claimed to be made by a co-conspirator during the course of and in furtherance of the conspiracy alleged in the Indictment.

### F.   Defendant is Entitled to All Statements Required to be Produced Under 18 U.S.C. § 3500.

Under 18 U.S.C.A. § 3500, Defendant may have Jencks Act statements after the witness has completed his or her testimony on direct examination.  Courts have, on a case-by-case basis, invoked their discretion to require production of the Jencks Act statements before the trial so unnecessary delays will not take place during the trial. *See, e.g.*, *United States v. Hammonds*, 2012 U.S Dist. LEXIS 6357 (M.D. Pa. 2012, Conner, J.) (disclosure three days before trial should provide counsel with ample time to prepare; however, one or two additional days of preparation may expedite trial); *Cf. United States v. Mote*, 2010 WL 2404360 (M.D. Pa. 2010) (Because disclosure of *Jencks* material over three days before trial would better allow the defendant to assert his case, the Court encourages the government to provide that information at the earliest possible date).

Early disclosure is appropriate in a case such as this, where virtually no other meaningful discovery has been provided to defense counsel and the Government's case relies so heavily on the testimony of its cooperating witnesses and alleged collaborators of the Defendant. Defendant's counsel will not be required to incur prejudicial delays while statements are being read, digested and a follow up investigation is being conducted.

Defendant therefore respectfully requests this Court to enter an Order requiring the Government to immediately deliver to the Defendant:

1.   The written statements and/or writings of all witnesses whom the Government intends to call in support of its case in chief.

2.   Under the decision of the Supreme Court of the United States in *Goldberg v. United States*, 425 U.S. 94 (1976), the notes and memoranda made by the Government counsel during the interviewing of witnesses whom the Government intends to call in support of its case in chief.

3.   Production of all grand jury testimony of witnesses whom the Government intends to call at trial.

13

4. Memoranda of any oral statements given by witnesses whom the Government intends to call at trial.

5. All reports of federal and state agents and agencies about the Defendant.

      **G.**    **Defendant is Entitled to Any Information that May Result in a Lower Sentence Under the Guidelines.**

Defendant requests the Government disclose all evidence and information that may cause a lower sentence under the Guidelines. This information is discoverable under *Brady v. Maryland*, 373 U.S. 83 (1963), and includes any information that affects the base offense level or specific offense characteristic under Chapter 2 of the Guidelines. Also included in this request is any information relevant to a Chapter 3 adjustment, a determination of Defendant's criminal history, or any other application of the Guidelines.

      **2.**    **THE COURT SHOULD GRANT THE DEFENDANT'S MOTION FOR SEVERANCE OR SUPPRESSION OF THE CO-DEFENDANT'S STATEMENTS.**

Following the execution of a search warrant on February 23, 2021, at the Paramount Motel, Room No. 3, 2220 Milford Road, East Stroudsburg, Pennsylvania, law enforcement officers arrested and interrogated Co-Defendant, Matthew Luce. Defendant is informed and believes that Co-Defendant, Matthew Luce, has made, or may have made, statements and/or admissions and/or confessions, outside the presence of the Defendant which implicate Defendant. Such statements are prejudicial to Defendant and are not admissible against this Defendant.

In *Bruton v. United States*, 391 U.S. 123 (1968), the Supreme Court held that a defendant is deprived of his Sixth Amendment right of confrontation when a facially incriminating confession of a non-testifying defendant is introduced into evidence at their joint trial, even if the jury is instructed to consider the confession against only the co-defendant.

14

Rejecting the argument that a jury instruction not to consider the statements against the co-defendant would be sufficient, the Court stated:

> There are certain contexts in which the risks that the jury will not, or cannot follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored....Such a context is presented here, where the powerfully incriminating extrajudicial statements of a co-defendant, who stands accused side by side with the defendant, are deliberately spread before the jury in a joint trial.  Not only are the incriminations devastating to the defendant, but their credibility is inevitably suspect, a fact recognized when accomplices do take the stand and a jury is instructed to weigh their testimony carefully given the recognized motivation to shift the blame onto others. The unreliability of such evidence is intolerably compounded when the alleged accomplice, as here, does not testify and cannot be tested by cross-examination.  It was against such threats to a fair trial that the Confrontation Clause was directed. _Id._ at 135-36.  (Footnotes omitted).

In _Bruton_, the Supreme Court clarified that severance of defendants may required to avoid prejudice:

> A defendant may be prejudiced by the admission in evidence against the co-defendant of a statement or confession made by that co-defendant.  The prejudice cannot be dispelled by cross-examination if the co-defendant does not take the stand.  Limiting instructions to the jury may not in fact erase the prejudice.  While the question whether to grant a severance is generally left within the discretion of the trial court, recent fifth circuit cases have found sufficient prejudice involved to make denial of a motion for severance reversible error.  _See, Schaffer vs. United States_, 221 F.2d 17 (5th Cir. 1955); _Barton vs. United States_, 263 F.2d 894 (5th Cir. 1959).

Following _Bruton_, in _Richardson v. Marsh_, 481 U.S. 200, 211 (1987), the Supreme Court held that admission of a non-testifying co-defendant's confession with proper limiting instructions does not violate the confrontation clause if the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence.  However, in _Grey v. Maryland_, 523 U.S. 185, 192 (1998), the Supreme Court held that redactions that replace a name with an obvious blank space, a word such as "deleted" or a symbol or other obvious indication of alteration so closely resemble _Bruton's_ un-redacted statements as to warrant the same legal result.  The Supreme Court reasoned "that a jury will often realize that such a redacted

confession refers specifically to the defendant, and an obvious deletion may call the jurors'

attention specifically to the removed name and encourage speculation about the reference."

*United States v. Peterson*, 140 F.3d 819, 821 (9th Cir. 1998), citing *Gray*, 118 S.Ct. at 1152.

Once the Court determines that a statement does incriminate a second defendant and

would be inadmissible against the second defendant if tried separately, the government may

agree not to introduce the statement. , *U.S. vs. Meyer*, 404 F.2d 254 (9th Cir. 1968) cert. denied

89 S.Ct. 1476, 394 U.S. 989, or the circumstances may be such that the Court will suppress the

statement.  *See, U.S. vs. Gordon*, 253 F.2d 177 (1958).

Here, it is believed that the statements of the Co-Defendant directly incriminate the

Defendant and that such statements would be inadmissible against him if he were tried

separately.  If the Court determines that judicial economy requires the Defendant and Co-

Defendant be tried together, rather than separately, the Court should suppress or exclude from

trial any statements made by the Co-Defendant, which directly implicate the Defendant.  Unless

the Co-Defendant's statements, which implicate himself and implicate Defendant, are excluded

from a joint trial, then severance is the proper remedy.  This Court should enter an order

suppressing all alleged statements from the Defendant that violate the rule in *Bruton* in the

context of a joint trial.  If such alleged statements are excluded, then the need for severance is

moot.  But, if not, then Defendant reserves the right to move pre-trial to sever his trial from the

trial of the Co-Defendant.

### 3.    THE COURT SHOULD SUPPRESS DEFENDANT'S POST-ARREST STATEMENT.

Defendant moves to suppress the Government's use as evidence all written or oral

statements made by Defendant to law enforcement agents while in custody on February 23, 2021

because he was invoked his right to counsel, but was questioned without counsel present.

The Fifth Amendment provides that "No person ... shall be compelled in any criminal case to be a witness against himself." *U.S. Const. amend. V*.  To safeguard this right, the Supreme Court in *Miranda v. Arizona* "imposed certain obligations on police in custodial interrogations, in order to dissipate the 'compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely.'" *United States v. Velasquez*, 885 F.2d 1076, 1084 (3d Cir. 1989) (quoting *Miranda*, 384 U.S. at 467, 86 S.Ct. 1602).  The familiar *Miranda* warnings require police to "inform the suspect of his right to remain silent and his right to have counsel present during interrogation, as well as their intent to use his statements to secure a conviction." *Id.*  Police must also "cease the interrogation if at any point the suspect indicates that he wishes to remain silent or that he wants an attorney." *Id.*

In *Edwards v. Arizona*, the Supreme Court established a bright-line rule for suspects who have invoked the right to counsel: "an accused person in custody who has invoked his desire not to speak until he has conferred with counsel 'is not subject to further interrogation ... until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.'" *Id.* (quoting *Edwards*, 451 U.S. at 484-85, 101 S.Ct. 1880).  If a suspect who has invoked the right to counsel but not yet met with counsel initiates discussion with the authorities, further interrogation can take place. *Id.* at 1084, 1087.

A waiver of the *Miranda* rights must be voluntary, knowing, and intelligent considering the totality of the circumstances. *Id.* at 1086 (citing *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602).  A waiver is voluntary if "it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Colorado v. Spring*, 479 U.S. 564, 573, 107 S.Ct. 851, 93 L.Ed.2d 954

17

(1987) (quoting _Moran v. Burbine_, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)).

In the voluntariness inquiry, "[a] suspect's background and experience, including prior dealings

with the criminal justice system, should be taken into account." _United States v. Jacobs_, 431 F.3d

99, 108 (3d Cir. 2005).  A waiver is knowing and intelligent if "made with a full awareness both

of the nature of the right being abandoned and the consequences of the decision to abandon it."

_Spring_, 479 U.S. at 573, 107 S.Ct. 851 (quoting _Burbine_, 475 U.S. at 421, 106 S.Ct. 1135).  In

sum, a suspect who has invoked the right to counsel and has not yet met with counsel is

generally not subject to further interrogation unless the suspect initiates discussion with law

enforcement. _See, Velasquez_, 885 F.2d at 1084-89.

Here, when Defendant was arrested on February 23, 2021, at the Paramount Motel, Room

No. 3, 2220 Milford Road, East Stroudsburg, Pennsylvania, he immediately asked for an

attorney.  However, law enforcement officers ignored Defendant's request for an attorney and

transported him to the Monroe County District Attorney's Office in Stroudsburg, Pennsylvania,

where he was handcuffed to a ring on a wall and left standing in a small room for over an hour.

Even though law enforcement officers knew Defendant was "high as a kite," they took

Defendant to a small interview room, read his _Miranda_ warnings, and questioned him even

though he had requested an attorney immediately upon arrest.  During questioning, Defendant

made a second request for a lawyer; however, law enforcement officers once again ignored his

request for an attorney and continued to question him until he finally terminated questioning and

refused to answer more questions.  The totality of the circumstances will show Defendant's post-

arrest statements to law enforcement officer was neither voluntarily given, nor in compliance

with the Defendant's Constitutional Rights.  Accordingly, such statements should be suppressed.

4.     THE COURT SHOULD ORDER DISCLOSURE OF CO-DEFENDANT
       AND CO-CONSPIRATOR STATEMENTS

Defendant has moved for pre-trial disclosure of any statements made by alleged co-conspirators which the government will seek to introduce as Defendant's statements under Rule 801(d)(2)(E) of the Federal Rules of Evidence.  Federal Rule of Criminal Procedure 16 governs discovery in a criminal case.  Rule 16(a)(2) does not "authorize the discovery or inspection of statements made by government witnesses or prospective government witnesses except as provided in 18 U.S.C. §3500." Fed. R. Crim. P. 16(a)(2).  The Jencks Act, 18 U.S.C. §3500, provides that government witness or prospective witness statements are not discoverable until after the witness has testified on direct examination. 18 U.S.C. §3500(a).

    Even though Rule 16(a)(1)(A) of the Federal Rules of Criminal Procedure only pertains to oral statements "made by the defendant," some courts have interpreted the rule to apply to oral statements made by co-conspirators.  For example, in _United States v. Turkish_, 458 F. Supp. 874 (S.D.N.Y. 1978), 623 F.2d 769 (2d Cir. 1980), the court ordered the government to disclose all statements "made during the course of and in furtherance of the conspiracy by those co-conspirators whom the government does not intend to call as witnesses at trial." _Id._ at 882.  In _United States v. Agnello_, 367 F. Supp. 444 (E.D.N.Y. 1973), disclosure was ordered for all statements made by co-conspirators which the government intends to introduce against the defendant as his own. _Id._ at 449.  The district courts have generally followed this policy of ordering disclosure of co-conspirator's statements when the declarant will not be testifying for the government. _See, e.g._ _United States v. McMillen_, 489 F.2d 229, 230-31 (7th Cir. 1972), _Siegel v. McMillen_, 410 U.S. 955, 35 L. Ed. 2d 687, 93 S.Ct. 1420 (1973); _United States v. Thevis_, 84 F.R.D. 47, 56-57 (N.D. Ga. 1979); _United States v. Turkish_, 458 F. Supp. at 887; _United States v. Brighton Bldg. & Maintenance Co._, 435 F. Supp. 222, 233 n. 20 (N.D. Ill. 1977) 598 F.2d 1101

(7th Cir. 1979); _United States v. Bloom_, 78 F.R.D. 591, 618 (E.D. Pa. 1977); _United States v. Fine_, 413 F. Supp. 740, 743 (W.D. Wis. 1976); _United States v. Balogun_, 971 F. Supp. 1215 (N.D. Ill. 1997) (holding the phrase, "statements made by the defendant," in Fed. R. Crim. P. 16(a)(1)(a), should be interpreted when read _in pari materia_ with Fed. R. Evid. 801(d)(2)(E), to include statements made by a co-conspirator which may be imputed to a defendant under Fed. R. Evid. 801(d)(2)(E)).

Other courts have rejected this interpretation. _See, United States v. Tarantino_, 269 U.S. App. D.C. 398, 846 F.2d 1384, 1418 (D.C. Cir. 1988); _In re United States_, 834 F.2d 283, 287 (2d Cir. 1987); _United States v. Orr_, 825 F.2d 1537, 1541 (11th Cir. 1987); _United States v. Roberts_, 811 F2d 257, 258 (4th Cir. 1987); _United States v. Bledsoe_, No. 2:05CR370, 2006 U.S. Dist. LEXIS 78898, 2006 WL 3098770, at *2 (W.D. Pa. Oct. 30, 2006); _United States v. Breslin_, No. 96-CR-202, 1996 U.S. Dist. LEXIS 15985, 1996 WL 622778, at *1 (E.D. Pa. 1996); _United States v. Giampa_, 904 F. Supp. 235, 284-85 (D.N.J. 1995).

Eliminating surprise is a primary factor weighing in favor of allowing co-conspirators' statements to be as discoverable as Defendant's statements.  Pretrial disclosure of conspirators' declarations which the government plans to introduce as the Defendant's own would substantially reduce the possibility of unfair prejudice.  The Defendant will have more time to assess the veracity of the declarations, to build a rebuttal case, to subpoena witnesses, and to move the Court to suppress the statements as prejudicial or untrustworthy under Rule 403 of the Federal Rules of Evidence.  The opportunity for _in limine_ rulings would save substantial time and reduce confusion and chance of error at the trial.

A district court has the inherent power to order discovery more far-reaching than that mandated by Rule 16. _United States v. Nobles_, 422 U.S. 225, 231, 95 S.Ct. 2160, 2166, 45 L. Ed.

2d. 141 (1975) ("Decisions of this court repeatedly have recognized the federal judiciary's inherent power to require the prosecution to produce the previously recorded statements of its witnesses…").  Therefore, the Court should, in exercising its sound discretion, require the government to disclose statements made by the co-conspirator(s) that the government intends to offer against the Defendant under Fed. R.Crim.P. 801(d)(2)(E) including:

    (a)    Relevant written or recorded statements made by any co-defendant or claimed co-conspirator, indicated or unindicated, that are in the government's possession, custody, or control, or that through due diligence may become known to the government; and

    (b)    The substance of any oral statements that the government intends to offer in evidence made by any co-defendant or claimed co-conspirator, indicted or unindicted, before or after arrest, in response to interrogation by any person known to the declarant to be a government agent.

**5.**    **THE COURT SHOULD HOLD A _JAMES_ HEARING.**

Rule 801(d)(2)(E) of the Federal Rules of Evidence provides an exception to the hearsay rule to admit into evidence statements of a co-conspirator made during the court of and in furtherance of a conspiracy. Fed. R. Evid. 801(d)(2)(E).  Before the statements can be admitted, the Court must determine whether the statement was made during the course of and in furtherance of a conspiracy. *See, Glasser v. United States*, 315 U.S. 60 (1942); Fed. R. Evid. 104(a) ("Preliminary questions concerning the… admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b).").

Due to the complexity of some conspiracies, it may be difficult, if not impossible, for the government to establish the existence of the conspiracy and participation of the co-conspirators

before seeking admission of a co-conspirator's statements.  *See*, *United States v. Gambino*, 926 F.2d 1355, 1360 (3ʳᵈ Cir. 1991); *United States v. Continental Group, Inc.*, 603 F.2d 444, 457 (3ʳᵈ Cir. 1979).  In these instances, the co-conspirator's statements can be conditionally admitted into evidence, provided the government establishes the existence of the conspiracy and each co-conspirator's participation before it closes its case. *See*, *Gambino*, 926 F.2d at 360-61.  The difficulty with conditionally admitting a co-conspirator's statement subject to a later connection is that, at the close of evidence, the court may determine the prosecution failed to meet its burden of proof and one or more defendants could claim to have been prejudiced.

To alleviate this concern, the Court may conduct a pre-trial hearing in accordance with *United States v. James*, 590 F.2d 575, 581-582 (5ᵗʰ Cir. 19790, sometimes called a "*James* Hearing," to establish the existence of a conspiracy.  Where the Government intends to rely on co-conspirators' statements, the Court should grant the Defendant's motion and hold a *James* proceeding.  Without a pre-trial hearing on the admission of the statements, tremendous court time will be used which will disrupt an orderly presentation of this trial.

Here, Defendant believes that the Government's evidence about the acts and declarations of Defendant cannot establish his alleged participation in the conspiracy charged in the indictment. The declarations of the other alleged co-conspirator(s), including alleged co-conspirator statements captured on state and federal wiretaps, should not be admitted into evidence unless the Government first establishes, based on Defendant's own acts and declarations, he was a participant in the alleged conspiracy and the conduct charged in the indictment is in furtherance of said conspiracy. Due to the complexity and volume of issues which may arise, the best approach is to hold a "*James* hearing" before trial.

As one astute judge noted:

Allowing the government the leisure to connect-up the foundation of the proof at a later time substantially increases the risk that the jury will be exposed to inadmissible evidence that is highly prejudicial. In such instances a mistrial will often be required to eliminate the prejudice a cautionary instruction cannot cure, resulting in the "inevitable serious waste of time, energy and efficiency that accompanies a mistrial."

United States v. Howard, 706 F.2d 267, 270 (8th Cir. 1983).

Even if this Court declines to conduct a full evidentiary hearing on the admissibility of co-conspirator's statements, the Court should still require the Government to make a pretrial proffer of the evidence it will present to establish the existence of the conspiracy and the declarations made to further that conspiracy and defer the final decision until the conclusion of the presentation of evidence. See, United States v. Cox, 4923 F.2d 519 (7th Cir. 1991) (the "preferable procedure would be to at least require the government to preview the evidence which it believes brings the statements within the co-conspirator rule before delving into the evidence at trial"). Without the requested pre-trial determination, Defendant will be subject to a finding of guilt based on acts and declarations of others that are not attributable to him. Therefore, the Court should require the Government to offer proof at an evidentiary hearing or to make a written proffer of the facts it intends to prove to establish the conspiracy charged in the Indictment. If the Government cannot sustain its burden that the conspiracy exists, or that Defendant was a participant, Defendant requests permission to file additional pre-trial motions.

**6.     THE COURT SHOULD ORDER DISCLOSURE OF CONFIDENTIAL INFORMANT INFORMATION.**

Controlling law requires the disclosure of identifying information about confidential sources who become percipient witnesses. The leading case on disclosure of confidential informant information has been Roviaro v. United States, 353 U.S. 53 (1957). In Roviaro, the

defendant filed a motion for bill of particulars requesting the name, address, and occupation of "John Doe," a witness to the drug transactions charged against the defendant.  The government objected on the ground that John Doe was an informer and his identity was privileged.  The motion was denied, the case tried and appealed, and the Supreme Court found prejudicial error. *Roviaro*, 353 U.S. at 65.

The Supreme Court acknowledged the existence of the informer's privilege, "in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro*, 353 U.S. at 59.  The court explained that "[t]he privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Id.*

The Supreme Court also clarified, however, that the privilege is limited, and identified three situations where the privilege was inapplicable: first, "where the disclosure of a communication will not tend to reveal the identity of an informer"; second, where "the identity of the informer has been disclosed to those who would have cause to resent the communication"; and third, "[w]here the disclosure of an informant's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." *Roviaro*, 353 U.S. at 60.

In these situations, the trial court must order disclosure of the informant's name and address and, if the government withholds the information, dismiss the action. *Roviaro*, 353 U.S. at 61; 65, fn. 15.  In Roviaro's case, the government did not defend the non-disclosure of the informant's identity regarding count one, which charged a sale of heroin to the informant. *Roviaro*, 353 U.S. at 58.  As to count two, charging possession of heroin, the government did

24

defend, but the Supreme Court held that disclosure was required because the testimony of the informant, who was a material eyewitness, "was highly relevant and might have been helpful to the defense." *Roviaro*, 353 U.S. at 1263.

Following *Roviaro*, the courts interpreting the decision have fleshed out the defendant's right to disclosure of the identity of an informant.  First, the *Roviaro* court had indicated that the right to disclosure was grounded in "the individual's right to prepare his defense." *Roviaro*, 353 U.S. at 62.  Later cases emphasize the constitutional underpinning of the right to disclosure. Thus, in *Gaines v. Hess*, 662 F.2d 1364 (10th Cir. 1984), the Tenth Circuit applied *Roviaro* to a state conviction.  Noting that *Roviaro* itself had cited "fundamental requirements of fairness" as a reason for limiting the informer's privilege, the Tenth Circuit held that "withholding the identity of an informant who may be critical to the conduct of the defense infringes the defendant's constitutional right to a fair trial, which includes the right to adequately prepare and present that defense." *Gaines*, 662 F.2d at 1368. *See*, *United States v. Ordonez*, 737 F.2d 793, 809 (9th Cir. 1984) ("If the district court believed that disclosure would have been 'highly relevant and might have been helpful to the defense' of appellants, it was error of constitutional dimension to deny disclosure solely because of the potential danger to the informer"); *United States v. Price*, 783 F.2d 1132, 1139 (4th Cir. 1985) ("the district court's refusal to compel disclosure of the informant's identity denied Price a fair trial").

Second, post-*Roviaro* cases have consistently required disclosure of an informant's identity where the person is an eyewitness to the charged crime.  "The defendant is generally able to establish a right to disclosure 'where the informant is a key witness or participant in the crime charged, someone whose testimony would be significant in determining guilt or innocence.'" *United States v. Saa*, 859 F.2d 1067, 1073 (2d Cir. 1988).  "[W]here the witness is

an active participant or witness to the offense charged, disclosure will almost always be material to the accused's defense." _United States v. Barnes_, 486 F.2d 776, 778-779 (8th Cir. 1973). "[W]here the informant is an actual participant, and thus a witness to material and relevant events, fundamental fairness dictates that the accused have access to him as a potential witness." _Price_, 783 F.2d at 1139. _See United States v. Amador-Galvan_, 9 F.3d 1414, 1417 (9th Cir. 1993) ("[I]f they were percipient witnesses, these witnesses could provide eyewitness testimony; if not, they might still be able to provide information which might lead to a firsthand source or circumstantial evidence.  Any such evidence would clearly be 'relevant and helpful' to preparing Amador-Galvan's defense").

Third, disclosure cannot be denied based on the Government's statement that the witness does not wish to be interviewed by the defendants.  "[H]aving the prosecution pass along to an informant a request by defendants that they be allowed to interview him is no substitute for permitting defense counsel to ask the informant themselves." _Saa_, 859 F.2d at 1074.

Fourth, defense counsel must be allowed to discuss the identity of the witness (but not necessarily his or her address or phone number) with the Defendant.  "[A]n attorney's duty to provide an adequate defense for his client would ordinarily require that the attorney share this information with his client." _United States v. Herrero_, 893 F.2d 1512, 1526 (7th Cir. 1990).

Finally, where the informant's identity is highly relevant and potentially helpful to the defense in defending against a broad reaching conspiracy count, it would be "error of constitutional dimension to deny disclosure solely because of the potential danger to the informer." _Ordonez_, 737 F.2d at 793.  The government has been provided statutory authority to take a wide range of measures for the protection of witnesses. _See,_ 18 U.S.C. § 3521.  If these

are unavailable or inadequate, the government can refuse disclosure despite the court's order and suffer a dismissal of the action. *Ordonez*, 737 F.2d at 809.

The burden upon Defendant is one of a "minimal threshold showing." *United States v. Sai Keung Wong*, 886 F.2d 252, 256 (9th Cir. 1989). *Roviaro* itself and the cases which follow it have consistently required disclosure of an informant's identity where the person is an eyewitness to the charged crime. When the charged crime is an alleged conspiracy, the charge itself expands what comes within Federal Rule of Evidence 602 personal knowledge. Here, Confidential Witness #1 ("CW #1") provides percipient witness eyewitness information relevant to the defense of the alleged conspiracy charge. Additionally, there is exculpatory impeachment information about this witness that would cast doubt on his or her credibility which needs to be disclosed. *United States v. Blanco*, 392 F.3d 382, 387 (9th Cir. 2004) (Impeachment evidence is exculpatory evidence within the meaning of *Brady*). Confidential Witness #2 ("CW #2") is not a percipient eyewitness regarding the conspiracy charge, but she/he may lead to a first-hand source or circumstantial evidence. Based upon its own investigation and review of the discovery, defense counsel asserts these informant percipient witnesses can provide testimony or information helpful to the defense of the charged conspiracy. The burden of a minimal threshold showing has been met here. Therefore, the Court should grant Defendant's motion to disclose identifying information regarding CW #1 and CW #2.

**7.     THE COURT SHOULD EXCLUDE THE MOTEL ROOM PHOTOGRAPHS.**

On February 23, 2021, law enforcement officers executed a search warrant at the Paramount Motel, Room #3, 2220 Milford Road, East Stroudsburg, Pennsylvania, and arrested the Defendant and five other occupants of the motel room. After law enforcement officers

searched the motel room, including bags, containers and clothing within the room, they photographed the scene.

The contested photographs contain no date stamps or time stamps and seem to show the motel room after the search was completed and the contents of containers, bags and clothing were emptied onto the motel room beds and dressers.  Therefore, numerous items, including suspected controlled substances, paraphernalia and currency, were not in the locations where law enforcement officers found them when they entered and searched the motel room.  Third Circuit law has been settled for over a century.  Photographs ". . . have been admitted to show the condition and identity of a premises.  But they are not admissible unless authenticated by other evidence that they are correct resemblances or truthful representations." _Porter v. Buckley_, 147 F.3d 140, 142 (3d. Cir. 1906).  The photographs are not date stamped or time stamped and they do not fairly and accurately show the position of the items in the motel room before the police dumped everything.  Defendant therefore requests that the government be precluded from using the inauthentic and inaccurate pictures at trial pursuant to Fed. R. Evid. 901(a).

Alternatively, the photographs should also be excluded because they will be unfairly prejudicial (the police set them up) and will cause jury confusion under Fed. R. Evid. 403.  Here, law enforcement officers placed various items of evidence, including suspected controlled substances, paraphernalia and currency, found in bags, containers and clothing, in close proximity to each other on the motel room beds and dressers for the purpose of taking photographs.  The probative value of this attempt to manufacture guilt is substantially outweighed by the danger of unfair prejudice.  Entry of the "created" evidence into the trial would be misleading and would cause jury confusion. (Fed R. Evid. 403).  Accordingly, the Court should preclude the government from using or introducing the motel photographs at trial.

**III.    CONCLUSION**

For the reasons set forth, the Court should grant Defendant's Pretrial Motions.


Respectfully Submitted,

RINALDI & POVEROMO, P.C.


BY: s/Carl J. Poveromo_____
        Carl J. Poveromo, Esquire
        Court-Appointed CJA Counsel for
        Defendant, Walter Kenneth Parfaite
        Attorney I.D. No. 44713

        520 Spruce Street
        Scranton, PA 18503
        Telephone: (570) 346-7441
        Facsimile: (570) 346-8170
        cjp@lawinpa.com