**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

**UNITED STATES OF AMERICA,**    :

        **3:21-CR-56**

        :

    **v.**        :

        :    **(JUDGE MANNION)**

**WALTER KENNETH PARFAITE,**    :

    **Defendant**        :

**<u>MEMORANDUM</u>**

Before the court in this case with charges of drug trafficking and distribution of illicit drugs, are twenty (20) pre-trial motions, (Doc. 34), including 18 discovery motions, a suppression motion, and a motion *in limine*, filed by defendant Walter Kenneth Parfaite, a/k/a "Kenny." The motions of defendant Parfaite have been briefed and Exhibits have been submitted. For the reasons set forth below, the court will **GRANT IN PART** and, **DENY IN PART** the pre-trial discovery motions of remaining defendant Parfaite. The court will **DEFER** ruling on Parfaite's motion *in limine* to preclude the government from introducing photographs into evidence until the time of trial. The court will **DENY AS MOOT**, Parfaite's motion to suppress the recorded statements of his then co-defendant, Matthew Luce.

1

## I.   BACKGROUND[1]

On March 3, 2021, a grand jury charged Parfaite with three counts in a 7-count Indictment, to wit: Count 1, Conspiracy to Distribute Methamphetamine and Heroin, in violation of 21 U.S.C. §846; Count 6, Possession with Intent to Distribute Methamphetamine, in violation of Title 21 U.S.C. §841(a)(1); and, Count 7, Possession with Intent to Distribute Heroin, in violation of Title 21 U.S.C. §841(a)(1). (Doc. 1). The Indictment also contains a forfeiture allegation.

On March 12, 2021, Parfaite, was arraigned by Chief United States Magistrate Judge Mehalchick, and he entered a plea of "Not Guilty" to the charges. He was ordered detained by the judge and has remained detained at Lackawanna County Prison to the present time. (Docs. 16 & 18).

On October 4, 2021, Parfaite filed numerous omnibus pre-trial motions, (Doc. 34), including the following: a motion for discovery under Fed.R.Crim.P. 16(a)(1)(A)-(F); a motion for material under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194 (1963), as well as *Giglio* material; a

---

[1] Parfaite's co-defendant in the Indictment, Matthew Luce, a/k/a "Luck", pled guilty on November 12, 2021, to all seven counts in the Indictment. (Doc. 53). Luce is currently awaiting sentence. The court also notes that for present purposes only, it incorporates herein by reference the lengthy factual background of this case which is detailed in the government's opposition brief. (Doc. 47 at 4-19). *See also* Doc. 48, DVD, Ex. B, which is Parfaite's February 23, 2021 unredacted audio recorded statement given to investigators with the Monroe County District Attorney's Office, ("MCDA"), after his arrest.

motion to receive copies of his recorded interview and the recorded interviews of then co-defendant Luce and Confidential Witness #1, (CW #1"), and Confidential Witness #2, ("CW #2"); a motion pursuant to Fed.R.Evid. 403 and 404(b) for the government to disclose all evidence of other or similar crimes, wrongs, or acts, allegedly committed by him or by then co-defendant Luce to be used at trial; a motion for the names of each expert witness and related information who the government plans on calling to testify at trial; a motion for all statements required to be produced under Jencks, 18 U.S.C. §3500; and a motion for information related to the grand jury such as the dates of each grand jury that heard evidence about this case, the instructions provided to the grand jury before the Indictment was returned, and the voting record and transcript of the return in open court of the Indictment. Parfaite also filed a motion for severance or suppression of the statements made by then co-defendant Luce and he requests the court to enter an Order separating his trial from Luce's trial and/or to issue an Order suppressing or excluding from his trial the statements made by then co-defendant Luce. Parfaite also filed a motion to suppress his statements made to investigators after his arrest on February 23, 2021. Parfaite further moves for an Order directing the government to disclose any statements made by co-conspirators that it intends to offer against him at trial under Fed.R.Crim.P. 801(d)(2)(E). Parfaite also moves the court conduct a "*James* hearing" to determine the admissibility of any co-conspirator's statements which the government intends to introduce under the "co-conspirator's exception" to

3

the hearsay rule, F.R.E. 801(d)(2)(E). Further, Parfaite moves for the disclosure of identifying information regarding CW #1 and CW #2 because they may have information relevant to the drug trafficking conspiracy count, Count 1.

Finally, Parfaite filed a motion *in limine* to exclude from evidence at trial the photographs taken by officers on February 23, 2021, after the execution of a search warrant at the Paramount Motel, Room #3, 2220 Milford Road, East Stroudsburg, Pennsylvania. Parfaite moves to exclude the photographs pursuant to Fed.R.Evid. 403 and 901 claiming that they are not date stamped or time stamped to reflect that they were contemporarily taken at the time of the search warrant execution, and that they are not correct resemblances or truthful representations of the motel room and are confusing and unfairly prejudicial.

Parfaite simultaneously filed his combined brief in support of his motions on October 4, 2021. (Doc. 35).

After being granted an extension of time, on November 8, 2021, the government filed its consolidated brief in opposition to all of Parfaite's motions, (Doc. 47), as well as its Exhibits on a DVD, (Doc. 48).

The court rescheduled the final pre-trial conference, ("FPTC"), in this case for April 8, 2022, and the trial date is now set for May 9, 2022. As noted, Parfaite is now the sole remaining defendant in this case.

4

The court will first address Parfaite's pre-trial discovery motions. (Doc. 34 at 2-11).[2] Then, Parfaite's motion to suppress Luce's statements and his motion *in limine* will be discussed.

## II.    DISCUSSION

Initially, Parfaite, (Doc. 35 at 2), admits that:

Defendant has received some discovery from the Government, including a CD containing 125 pages of documents, photographs, and videos from the execution of a search warrant on February 23, 2021, a USB flash drive containing an audio file, digital forensic reports, 12,667 pages of Facebook records and documents from the Monroe County District Attorney's office, and fifty-two pages of additional discovery materials.

Also, at the outset, the court recognizes that the government has already provided Parfaite with significant discovery materials since his motion was filed, which the government indicates, (Doc. 37 at 20-21), includes the following:

---

[2]The court will issue a separate Memorandum with respect to Parfaite's motion to suppress his statements made to investigators after his arrest on February 23, 2021. The government also filed a motion *in limine* on October 7, 2021, (Doc. 37), seeking to introduce evidence on cross examination, pursuant to FRE 609, regarding the defendants' prior felony convictions from the prior ten years if they testify at trial, on their own behalf. The government also indicated that at the time, it was not seeking to introduce any FRE 404(b) evidence against the defendants. The government's motion has been briefed by the parties, (Docs. 38 & 44), and it will be addressed by the court, to the extent it relates only to Parfaite, in a separate Memorandum.

After the Indictment, the Government made several discovery disclosures. On March 11, 2021, the Government provided each defendant with the police reports and investigation paperwork for the [] recorded calls, pictures of the pre-recorded buy money, pictures and video from the execution of the above-described search warrant, criminal histories of the defendants, a copy of the search warrants and applications for the above-described Paramount Motel Room, and search warrant materials for relevant social media accounts.

On April 23, 2021, the Government provided further discovery to [Parfaite], including but not limited to: the audio [] recording of his February 23, 2021, statement to investigators, digital forensic reports of the cellular phones recovered from the motel room on February 23, 2021, Facebook records from the above-described social media accounts, [], the consent to search paperwork from Ashley Grimes, Amy Beth Gearhart, Kayla Fields, the *Miranda* waiver form of Amy Beth Gearhart, and the Federal Bureau of Investigation ("FBI") 302 form regarding the execution of the search warrant on February 23, 2021.

At first, the government did not give Parfaite a copy of Luce's audio/video recorded statement, and did not provide him with the digital forensic reports from the cellular phone of unindicted co-conspirator Michael Sparano. (Doc. 47 at 21-23).

On July 16, 2021, the government states that it provided further discovery to Parfaite, including, the following: "the complaint affidavit and detention order concerning Defendant Luce, interview notes from the February 23, 2021, police interviews with Ashley Grimes and Ryan Yesner, a second copy of the FBI 302 described above, the paperwork regarding the consensualization of phone recordings, …, and two laboratory reports from the Drug Enforcement Agency laboratory." Additionally, on August 10, 2021,

6

the government states that it provided "a summary of the expected testimony of the CIs in this case [i.e., CW #1 & CW #2] to Defendant Parfaite", and "[i]n that summary, the Government also disclosed the expected testimony of the other individuals who were either present in the [motel] room with the defendants on February 23, 2021, or who bought controlled substances from the defendants prior to February 23, 2021." (Doc. 47 at 22-23).

Finally, on November 5, 2021, the government provided additional discovery to Parfaite, (Id. at 23), including, the following:

> the full, unredacted statements of both defendants, the digital forensic report of Michael Sparano to Defendant Parfaite, the jail calls from Defendant Parfaite from Lackawanna County Prison, excerpts of the text conversations between co-conspirators Luce, Parfaite, and Sparano, the MCDA incident report, the recorded interview of unindicted co-conspirator Michael Sparano, and additional criminal history paperwork regarding Defendant Parfaite.

In sum, as of November 8, 2021, the government has provided Parfaite with "1145 pages of discovery, in addition to six digital forensic reports, Facebook records from five social media accounts, approximately 140 photographs, all the recorded interviews of the co-conspirators in this case, and all the laboratory reports from the analysis of any controlled substances currently in the Government's possession." Since the government did not possess any further laboratory reports regarding the heroin, fentanyl, and methamphetamine recovered in this case at the time of its brief, these reports had not yet been provided to Parfaite. (Id. at 23-24). Thus, the court directs the government to immediately provide Parfaite with all of the

7

laboratory reports regarding the heroin, fentanyl, and methamphetamine involved with this case, if it has not already done so.

As of November 2021, the government stated, (Id.)., that the only items in its possession that have not been turned over [to] the defendants are the recorded calls between the CI and Luce, …, the Grand Jury minutes of Det. Lippincott, and any recorded statements made by Government witnesses, which the Government classified as Jencks material." However, the government notes that the recorded calls between the CI and Luce, as well as all of the physical evidence recovered in this case, are available for inspection by defense counsel and defendant upon request. Thus, if Parfaite and his counsel want to inspect the stated evidence, it is incumbent upon them to make the arrangement with the government before the final pe-trial conference on April 8, 2022.[3]

In U.S. v. Yawson, 2014 WL 3401663, *1 (W.D. Pa. July 10, 2014), the court stated:

> Generally, governmental disclosure of evidence in criminal cases is governed by Federal Rule of Criminal Procedure 16(a). The United States Court of Appeals for the Third Circuit has recognized that discovery in criminal cases is limited to those areas delineated in Rule 16(a)(1) "with some additional material being discoverable in accordance with statutory pronouncements and the due process

---

[3]Since Parfaite's pre-trial motions and the briefs of the parties were filed, the court recognizes that the government has now provided defendant with significant additional amounts of discovery, and that Luce has pled guilty. Also, Parfaite now has new counsel. Thus, some of Parfaite's motions appear to be moot.

clause of the Constitution." <u>United States v. Ramos, 27 F.3d 65, 68 (3d Cir. 1994)</u>. As a general matter, these other areas are limited to the Jencks Act and materials available pursuant to the "*Brady* doctrine." *Id.*

The court will now address each of the 18 specific discovery requests of Parfaite *seriatim*.

**1. Written or recorded statements by the defendant:**

This request is moot since these statements have been provided to Parfaite. (*See* Doc. 48).

**2. Substance of oral statement made by Defendant:**

This request is moot since this information has been provided to Parfaite.

**3. Statements, confession or admissions made by Defendant:**

This request is moot since this information has been provided to Parfaite.

**4. Arrest reports and all other investigator notes:**

This request is moot since this information has been provided to Parfaite.

**5. All documents related to photographic ID procedures:**

This request is moot since the government represents that "[n]o such documents are in the Government's possession, nor is the Government aware of their existence."

**6. Evidence seized in this case:**

This request is moot since the government represent that "[a]n inventory of all items seized in this case has been turned over to [Parfaite]", and, as noted above, "[t]he items are available for physical inspection upon the request of [] defendant."

**7. All documents which the Government intends to use at trial as evidence in its case-in-chief:**

This request is moot since the government represent that "all such documents have been turned over to [Parfaite], or are available for review upon request."

**8. All documents material to the preparation of the defense:**

For the most part, this request is moot since the government represent that "[it] has turned over all documents in [its] possession outside of information regarding the identity of Confidential Informants, Grand Jury Materials, and materials under Jencks." The material that the government has not yet given to Parfaite will be discussed below.

**9. All documents reflecting physical mental examinations, scientific tests:**

As to the first part, this request is moot since "[t]he Government is not aware of any physical or mental examinations in this case." As to the second part, this request is also moot since the government states that "[a]ll forensic analyses of the controlled substances in the [its] possession have been turned over to [Parfaite]." Also, as mentioned, any other test results

10

performed on the controlled substances in this case that have not yet been provided to Parfaite must be immediately given to him.

In short, the court will **GRANT** Parfaite's motion for full discovery under Rule 16 and direct the government to immediately provide defendant with all material to which he is entitled under Rule 16 if it has not already done so.

Moreover, as part of its continuing duty under Rule 16, the government is directed to provide the defendant with any additional discovery materials of which it becomes aware that was not yet provided to defendant and that contain relevant information pertaining to the charges against him.

Additionally, to the extent that Parfaite requests the statements made by co-conspirators that were not yet provided to him, the court finds that this information does not fall under Rule 16 discovery and thus, the government is not required to provide such statements to defendant at this time. In U.S. v. Cheatham, 500 F.Supp.2d 528, 538 (W.D. Pa. 2007), the court stated "[d]istrict courts of the Third Circuit have consistently held that Rule 16 does not provide for the discovery of a co-conspirator's statement.") (citations omitted). The court in Cheatham, *id*. at 538-39, then "agree[d] with these courts and [found] that Rule 16 does not provide for the Government's production of a co-conspirator's statements to a defendant because such statements are not the defendant's own statement under Rule 16(a)(1)(A)."

Thus, insofar as Parfaite's motion requests information that does not come under Rule 16(a), the court denies defendant's requests for early or pre-trial disclosure, including for the statements made by co-conspirators.

11

Rather, these requests constitute Jencks material which the government states it will provide to the defendant at the appropriate time pursuant to the provisions of the Jencks Act, 18 U.S.C. §3500.

### 10. Request for *Brady/Giglio* Material:

The government represents that it is aware of its responsibilities under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194 (1963), and United States v. Giglio, 405 U.S. 150, 92 S.Ct. 763 (1972), regarding its trial witnesses and that it will comply with the mandates of those cases and their progeny. No doubt that under *Brady* the government has an obligation to disclose all evidence favorable to defendants, including both exculpatory evidence and impeachment evidence. *See* United States v. Moreno, 727 F.3d 255, 262 (3d. Cir. 2013). Also, it is clear that under *Giglio*, "the government must disclose materials that go to the question of guilt or innocence as well as materials that might affect the jury's judgment of the credibility of a crucial prosecution witness." United States v. Friedman, 658 F.3d 342, 357 (3d Cir. 2011). The government also has a continuing obligation to disclose any such evidence to defendants. "While the failure to timely disclose exculpatory evidence is not *ipso facto* reversible error so long as the defendant is not 'prevented by lack of time to make needed investigation,' exculpatory evidence nevertheless should be disclosed without undue delay." U.S. v. Yawson, 2014 WL 3401663, *2 (W.D. Pa. July 10, 2014) (internal citations omitted). The district court can direct when *Brady* material has to be disclosed to defendants. *Id.* (citation omitted).

12

The government states that "[a]ny such materials, if they do exist, have been turned over the Defendant. The Government is not aware of any *Brady* materials at this time that have not been disclosed to the defendant[], however, the Government will continue to provide any such materials to defense counsel, if and when the Government becomes aware of its existence."

Thus, if the government is aware of any further *Brady* exculpatory evidence that was not already turned over to the remaining defendant, the court directs the government to provide such evidence to Parfaite as soon as it becomes aware of it.

Additionally, "[w]hile *Brady* impeachment material ordinarily need be disclosed only 'in time for its effective use at trial,' the Third Circuit Court of Appeals also encourages adherence to a long-standing policy of promoting early production of all types of *Brady* material 'to ensure the effective administration of the criminal justice system.'" *Id*. (internal citations omitted). Based on the facts of this case, as detailed in the government's brief, the court will direct that the government provide remaining defendant Parfaite with *Brady* impeachment material at the appropriate time under the Jencks Act.

As such, Parfaite's motion for disclosure of exculpatory evidence and evidence bearing on the credibility of government witnesses, will be **GRANTED IN PART**, as specified above.

13

### 11. Motion for Disclosure Pursuant to FRE 404(b) and 609:

Parfaite's motion also seeks disclosure of any evidence which falls under Federal Rules of Evidence 404(b) and Rule 609. Parfaite contends that under Rule 404(b) and Rule 609, he is entitled to receive from the government pre-trial notice of any other crimes, wrongs, or bad acts involving him that it intends to introduce at trial.

In response, the government represents that it "is not seeking to introduce evidence of other bad acts or crimes [under Rule 404(b)] committed by [Parfaite] which fall outside the scope of the Conspiracy in this case, except for proper impeachment purposes if [] defendant testifies on [his] own behalf." Thus, the government indicates that it does not intend at this time to present any other evidence of prior bad acts of Parfaite that would require disclosure. (Doc. 37 at 5). The court directs that if the government obtains any new evidence which falls under Rule 404(b) and which it will attempt to use at trial, it provide the appropriate notice to Parfaite.

The government also notes that it "does intend to introduce evidence of bad acts that are intrinsic to the charged conspiracy, but not necessarily charged as substantive acts, namely [Parfaite's] possession with intent to distribute controlled substances, [his] distribution of controlled substances, and statements made by the defendant[], either orally or electronically, concerning the possession and distribution of controlled substances." (Id. at n. 1).

14

Indeed, "[t]he Court may admit evidence relating to uncharged misconduct when the evidence is intrinsic to the charges at issue." U.S. v. Ligambi, 890 F.Supp.2d 564, 574 (E.D. Pa. 2012) (citing United States v. Green, 617 F.3d 233, 249–50 (3d Cir. 2010)). "[E]vidence is intrinsic if it 'directly proves' the charged offense", which includes an act that is part of the charged offense. Id. (citations omitted). Further, "uncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime." Id. (citations omitted). Thus, any evidence of uncharged conduct of Parfaite that is intrinsic proof of the elements of the conspiracy charge in Count 1 of the Indictment, such as evidence of the structure and history of the conspiracy, is admissible at trial. See id. Additionally, "[a]ll evidence of uncharged misconduct, which does not fall into the parameters of intrinsic evidence, may be admitted under Rule 404(b) ...." Id. at 578. Of course, "[e]ven if [evidence is] admissible under Rule 404(b), the Court must exclude evidence under Rule 403 where the probative value of the evidence is substantially outweighed by the risk of unfair prejudice." Id. at 579.

"The Rules of Evidence do not set forth a specific time frame within which the Government must provide Rule 404(b) evidence, "[r]ather, '[w]hat constitutes reasonable notice in advance of trial [pursuant to Rule 404(b)] is determined by the circumstances and complexity of the prosecution.'" United States v. Buckner, 2020 WL 211403, *6 (M.D. Pa. Jan. 13. 2020) (citations omitted).

15

Based on the above, the court will direct the government to produce all Rule 404(b) evidence of which it is aware and that it intends to offer at trial, including evidence that is intrinsic to the conspiracy charge, by April 8, 2022, the date of the FPTC, which constitutes reasonable notice in this case.

With respect to Fed.R.Evid. 609, the government has filed its own motion *in limine*, (Doc. 37), in which it provided notice to Parfaite that if he testifies at trial, the government intends to introduce evidence on cross examination of his prior felony convictions specified in the motion to impeach him. The government also indicates that if Parfaite denies his specified prior convictions, the government reserves the right to call rebuttal witnesses to introduce objective evidence of the convictions.

"[T]he court can only order the government to provide advanced written notice of its intent to proffer any Rule 609(b) evidence, and not Rule 609(a) evidence", Buckner, 2020 WL 211403, *7. In any event, it appears that the government has provided Parfaite with notice of his prior convictions that it intends on using for the purpose of attacking his character for truthfulness if he testifies at trial, when it filed its motion *in limine* on October 7, 2021.[4]

Thus, Parfaite's motion for disclosure pursuant to Rule 404(b) and Rule 609, will be **GRANTED** to the extent stated above.

---

[4]The court notes that it has decided the government's motion *in limine*, (Doc. 37), by a separate Memorandum. (Doc. 71)

### 12. Expert Witness Disclosure under Rule 16(a)(1)(G):

Parfaite includes in his motions a request for the court to direct the government to provide him with its expert information pursuant to Fed.R.Crim.P. 16(a)(1)(G).

Rule 16(a)(1)(G) provides that "[a]t the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial." *See* United States v. Walker, 657 F.3d 160, 175 (citing United States v. Davis, 397 F.3d at 178 ("[T]he government must disclose, upon a defendant's request, 'a written summary of any testimony that the government intends to use.'")). Also, the summary "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed.R.Crim.P. 16(a)(1)(G). Rule 16(a)(1)(G) "is intended to provide the defendant with 'a fair opportunity to test the merit of the expert's testimony through focused cross-examination.'" U.S. v. McNeil, 2010 WL 56096, *7 (M.D. Pa. Jan. 5, 2010) (citation omitted). Further, "the purpose of this disclosure is to provide defendant with an opportunity to challenge the expert's opinion and qualifications." *Id*.

In its response to defendants' motions, (Doc. 37 at 32), the government states "[it] anticipates calling at least two expert witnesses, Detective Brian Webbe of the MCDA, who performed the forensic analysis of the cellular phones recovered from the Paramount Motel Room, and the Forensic

17

Chemist who performed the analysis of the alleged controlled substances recovered in the course of the investigation into this case." However, at the time of the government's response, the drug analysis was not completed and there was not any report for the controlled substances charged in this case. As indicated above, the court directs the government to immediately provide Parfaite with all of the drug laboratory reports when they are received, if it has not already done so. The government is also directed to provide Parfaite with the names of its expert witnesses, their credentials, and a summary of their testimony by April 8, 2022, if it has not already done so.

### 13. Motion for Early Jencks Disclosures:

Parfaite moves for early disclosure of Jencks material, including the grand jury testimony of the witnesses the government intends to call at trial, as well as grand jury testimony of the investigators, and he requests that the court order the government to provide him with such material prior to the trial.

In <u>U.S. v. Yawson, 2014 WL 3401663, *3, (W.D. Pa. July 10, 2014)</u>, the court explained the Jencks Act:

> The Jencks Act provides that after a government witness testifies, and upon motion by the defendant, the government must produce "any statement ... of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." <u>18 U.S.C. §3500(b)</u>; <u>United States v. Weaver, 267 F.3d 231, 245 (3d Cir. 2001)</u>. The purpose of Jencks disclosure "is to provide the defendant with an opportunity to review the witness's statements for any possible inconsistencies that he might use to impeach the witness." <u>United States v. Maury, 695 F.3d 227, 248 (3d Cir. 2012)</u>. Pursuant to <u>18 U.S.C. §3500(a)</u>, "no statement or report in the possession of the United States which was made by a Government

18

witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." Accordingly, "the government has no obligation to produce Jencks material until the witness has testified." Maury, 695 F.3d at 248.

Thus, "there is no authority by which th[e] court can compel the government to provide Jencks Act statements prior to the time any government witness has testified on direct examination at trial." Id.; see also U.S. v. Grier, 2012 WL 5614087, *5 (W.D. Pa. Nov. 15, 2012) ("The plain language of the Jencks Act, 18 U.S.C. §3500, the overwhelming precedent ..., and our court of appeals well-settled position on the matter makes clear that the Court cannot mandate disclosure prior to the day on which the witness testifies at trial."); United States v. Bangaroo, 2017 WL 3495702, *17-18 (M.D. Pa. Aug. 15, 2017) (court held that "the case law makes clear that Defendant's request to supply the [Jencks] material [prior to trial] are premature, and cannot be granted."); United States v. Taylor, 2018 WL 1960669, *5 (M.D. Pa. April 26, 2018) (court denied defendants' requests for early disclosure of Jencks material since the court has no authority to compel the government to disclose such material before the Act provides).

The court in United States v. Johnson, 218 F.Supp.3d 454, 459 n. 3 (W.D. Pa. 2016), noted that with respect to "the government's disclosure of information that falls solely under the Jencks Act", "[i]t is well-settled that the plain language of the Jencks Act precludes a court from compelling the disclosure of Jencks Act material prior to the completion of a government

19

witness' testimony on direct examination." (citing <u>United States v. Hill, 976 F.2d 132, 140 (3d Cir. 1992)</u>; <u>United States v. Murphy, 569 F.2d 771, 773 (3d. Cir.)</u>, *cert. denied*, <u>435 U.S. 955, 98 S.Ct. 1588 (1978)</u>). The court also noted, *id.*, that "[a]lthough courts lack the authority to order the early disclosure of Jencks material, the Third Circuit nevertheless has endorsed and encouraged the government's prevailing practice of committing to disclose Jencks material prior to trial." (citing <u>Murphy, 569 F.2d at 773</u>; <u>Hill, 976 F.2d at 140</u>). Here, the government, (Doc. 47 at 34), represents that "[t]o avoid delays and allow some time for the defendant to prepare cross examination of government witnesses, the government will voluntarily agree to disclose witness identities and provide Jencks statements and any criminal histories of witnesses at a reasonable time before trial, as is th[e] [U.S. Attorney] Office's typical practice." Further, the government states that it "has already provided [Parfaite's defense counsel on August 10, 2021] with a summary of what the Government expects its witnesses to testify to at trial."

As such, the court will **DENY** Parfaite's request for early disclosure of Jencks material, including any actual statements made by co-conspirators to the defendants. The court will only direct the government to disclose all Jencks material at the appropriate time in accordance with the Act, as specified above.

**14. Evidence that Government Witnesses suffer from physical or mental disabilities, drug addition, alcohol addiction, or emotional disturbance:**

The government states that it is treating this request as falling under *Giglio*, and will provide such materials at an appropriate date. No doubt that under *Giglio*, "the government must disclose materials that go to the question of guilt or innocence as well as materials that might affect the jury's judgment of the credibility of a crucial prosecution witness." United States v. Friedman, 658 F.3d 342, 357 (3d Cir. 2011). The government also has a continuing obligation to disclose any such evidence to defendant. "While the failure to timely disclose exculpatory evidence is not *ipso facto* reversible error so long as the defendant is not 'prevented by lack of time to make needed investigation,' exculpatory evidence nevertheless should be disclosed without undue delay." U.S. v. Yawson, 2014 WL 3401663, *2.

Nonetheless, there is no requirement in the Third Circuit that the government must provide defendant with *Giglio* material prior to trial. *See* United States v. Higgs, 713 F.2d 39, 43-44 (3d Cir. 1983). In this case, Parfaite has failed to show a special need for the early disclosure of the requested information regarding the credibility of the government's witnesses. The court recognizes that generally the government voluntarily discloses all *Giglio* material in its possession to the defendant three days prior to the trial testimony of each witness.

As such, Parfaite's motion for early disclosure of exculpatory evidence and evidence bearing on the credibility of government witnesses, will be **DENIED,** as specified above.

**15. Empanelment and Grand Jury Dates of Grand Jury, Instructions to the Grand Jury, Voting Record, and Transcript of Return in Open Court of the Indictment:**

Parfaite moves to have the government disclose the stated grand jury materials, including the transcript, pursuant to Federal Rule of Criminal Procedure 6(e)(3)(E)(ii).

"As a matter of public policy, grand jury proceedings generally must remain secret except where there is a compelling necessity." United States v. Procter & Gamble, 356 U.S. 677, 682 (1957).

> "The decision to permit disclosure [of grand jury transcripts] is within the discretion of the trial court judge who must assess whether the need for disclosure overbalances the requirements of secrecy." United States v. Mahoney, 495 F.Supp. 1270, 1272 (E.D. Pa. 1980). Federal Rule of Criminal Procedure 6(e)(3)(E) provides, inter alia, that "[t]he court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter: (i) preliminarily to or in connection with a judicial proceeding; (ii) at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury...." Fed.R.Crim.P. 6(e)(3)(E)(i)-(ii).

United States v. Bunty, 617 F.Supp.2d 359, 372 (E.D. Pa. 2008).

The government responds to this request by stating that "[it] will treat the testimony and instructions given to the grand jurors during the presentation of the current indictment, as Jencks material, and disclose it to

the defendant[] approximately three days prior to trial", but it states that "[a]dministrative information, such as empanelment and grand jury dates, ..., is not a 'matter occurring before the grand jury.'" (Doc. 47 at 35) (citing United States v. Murphy, 646 Fed. Appx. 153, 155-156 (3d Cir. 2016). Here, the government contends that "defendant Parfaite has failed to establish under what basis he demands th[e] [grand jury] discovery [administrative information] as it falls outside the scope of discoverable material under Rule 16 or the other discovery provisions...."

"In order to be entitled to grand jury information during discovery in a criminal matter, a defendant must demonstrate to the Court a 'particularized need' for the information that overrides the secrecy afforded to the grand jury." United States v. Mariani, 7 F.Supp.2d 556, 564 (M.D. Pa. 1998). "[T]he burden is on the party seeking disclosure to show a 'particularized need' that outweighs the need for secrecy." In re Grand Jury Subpoena, 103 F.3d 234, 239 (2d Cir. 1996). "Vague allegation[s], however, [do] not demonstrate a particularized need for disclosure." United States v. Minerd, 299 Fed.App'x 110, 111 (3d Cir. 2008); see also Nguyen, 314 F.Supp.2d at 616 (noting that the party seeking disclosure cannot satisfy its burden with "conclusory or speculative allegations of misconduct").

The court finds that Parfaite has failed to meet his burden of showing a particularized need to obtain the grand jury transcripts of trial witnesses prior to trial. Thus, the court will **DENY** Parfaite's motion for pre-trial disclosure of grand jury transcripts. The court will also direct the government

23

to provide Parfaite with the grand jury transcripts for any witness who will testify at trial during its case-in-chief at the appropriate time, in accordance with the Jencks Act.

As to the request for grand jury administrative information, the court will **DENY** Parfaite's motion since he has failed to show a "particularized need" that outweighs the need for secrecy, and he has failed to show that he has some real need for this information.

**16. Any information that may result in a lower sentence under the Guidelines:**

Parfaite moves for the court to direct the government to disclose any material that may mitigate his sentence if he is convicted. The government contends that this broad request should be denied since it "encompasses far more than either exculpatory or impeachment evidence under Brady or any of the federal discovery rules or applicable legal precedent." (Doc. 37 at 36).

"Pursuant to *Brady v. Maryland,* the Government must provide the defense in criminal cases with exculpatory material, including impeachment material, that it either possesses or could obtain through due diligence." *See* U.S. v. Isaac, 22 F.Supp.3d 426, 432 (E.D. Pa. 2014) (citations omitted). "Evidence is not suppressed, however, if the defendant could have obtained it 'from other sources by exercising reasonable diligence.'" *Id*. (citation omitted); *see also* Wilson v. Beard, 589 F.3d 651, 659 (3d Cir. 2009) ("The purpose of *Brady* is not to require the prosecution to disclose all possibly

favorable evidence to the defense but to make certain that the defendant will not be denied access to evidence which would ensure him a fair trial.").

As the court in <u>People v. Corraspe</u>, 2018 WL 679491, *2 (V.I. Jan. 31, 2018) (internal quotations and citations omitted), explained:

> The government need not disclose evidence that is irrelevant, speculative, or inculpatory; evidence available to the defense from other sources; evidence the defense already possesses, or evidence of which the prosecution could not reasonably be thought to have imputed knowledge or control. The government is not obliged under *Brady* to furnish a defendant with information which he already has or, with any reasonable diligence, he can obtain himself. The purpose of *Brady* is not to require the prosecution to disclose all possibly favorable evidence to the defense but to make certain that the defendant will not be denied access to evidence which would ensure him a fair trial.

*See also* <u>Marinelli v. Beard</u>, 2012 WL 5928367, *41 (M.D. Pa. Nov. 26, 2012) ("It is well-settled that the government does not violate *Brady* by failing to disclose exculpatory or impeaching evidence that is available to the defense from other sources in the exercise of due diligence.") (string citations omitted); <u>United States v. Perdomo, 929 F.2d 967, 973 (3d Cir. 1991)</u> ("Evidence is not considered suppressed if the defendant either knew or should have known of the essential facts permitting him to take advantage of any exculpatory evidence.").

As such, the court will **DENY** Parfaite's motion for the government to disclose all evidence that is mitigating of punishment or which "may result in a lower sentence under the Guidelines" since the government indicates that it has so far complied with its discovery obligations in this case, and since it

25

is not required to search for "potentially exculpatory information which it neither possessed nor of which it was aware." The court also notes that the government is aware of its "continuing obligations under *Brady* to disclose any exculpatory evidence [to Parfaite] which may come into [its] custody in the future." (Doc. 47 at 37).

**17. Motion for statements of co-conspirators and for a James Hearing:**

Parfaite moves for an Order directing the government to disclose any statements made by co-conspirators that it intends to offer against him at trial under Fed.R.Crim.P. 801(d)(2)(E). Parfaite also moves the court to conduct a "*James* hearing" to determine the admissibility of any co-conspirator's statements which the government intends to introduce under the "co-conspirator's exception" to the hearsay rule, F.R.E. 801(d)(2)(E).

Specifically, Parfaite moves the court to conduct a pre-trial hearing to determine the existence of a conspiracy and the admissibility of the statements of co-conspirators. No doubt that the government can admit statements of co-conspirators pursuant to a hearsay exception under Fed.R.Evid. 801(d)(2)(E). However, the court will not conduct a pre-trial hearing since there is no requirement under the Rules of Evidence for the government to first prove the existence of a conspiracy prior to the admission of any statement.

In response to Parfaite's requests, the government, (Doc. 47 at 55), states that:

26

[it] has provided both defendants with full un-redacted copies of each co-defendant's statements made to law enforcement ([Doc. 48] Attachments A and B). The Government has also supplied the full unredacted statement of uncharged co-conspirator, Michael Sparano, to both defendants[,] [as well as] [a]ll notes, reports, and other writings created by law enforcement which reflect any statements made by the co-conspirators. The only recorded statements of any of the co-conspirators which has not been provided to the defendant[s] are the recorded conversations between the CIs and Defendant Luce. Recordings of these conversations are in the Government's possession and will be available for inspection by defense counsel and defendants at the U.S. Attorney's office, upon request, in order to protect the identity of the confidential informants.

Further, the government indicates, (Id. at 55-56), that:

[in addition to] the post-arrest statements made by both co-defendants, [Luce and Parfaite], the Government will also seek to introduce statements made by the co-conspirators during the course of their conspiracy. These statements will consist of text message [including, SMS messages, other types of text messages, and other electronic communications, either through Facebook or other social media applications] conversations between the co-conspirators, as well text messages made by the co-conspirators made in furtherance of the conspiracy.

The court in Grier, 2012 WL 5614087, *5, explained:

Federal Rule of Evidence 801(d)(2)(E) provides an exception to the hearsay rule to admit into evidence statements of a co-conspirator made during the course of and in furtherance of a conspiracy. Before any such statement may be admitted, however, the proponent must establish by a preponderance of the evidence that (i) the conspiracy existed; (ii) both the defendant and the declarant were members of the conspiracy; and (iii) the statement was made in the course of the conspiracy and in furtherance of the conspiracy. United States v. McGlory, 968 F.2d 309, 333 (3d Cir. 1992). In determining whether the statement is admissible as a statement of a coconspirator, the court

27

may consider the statement itself. Bourjaily v. United States, 483 U.S. 171, 181, 107 S.Ct. 2775 (1987).

In this case, the government states, (Id. at 57), "that all the statements intended to be introduced at trial by the Government meet all four requirements by a preponderance of the evidence." It then explains:

> The evidence for the conspiracy will be introduced throughout the Government's case, but will include multiple witness testimonies, physical evidence, and coconspirator confessions, …. All statements will be made by the co-conspirators speaking to one another, or to actual or potential buyers/sellers of controlled substances. Additionally, as both defendants are charged with conspiracy to distribute controlled substances between on or about November 26, 2020, and February 23, 2021, all the statements will take place between those two dates. Finally, all statements will be made in furtherance of the conspiracy, in that they go directly to sales or purchases of controlled substances, or to establish other acts within the conspiracy, such as the introduction of new potential purchasers, or to maintain the relationship between suppliers, purchasers, or co-conspirators.

"Due to the complexity of some conspiracies, it may be difficult, if not impossible, for the government to establish the conspiracy and the participation of the co-conspirators before seeking admission of a co-conspirator's statements." Grier, 2012 WL 5614087, *6 (citing United States v. Gambino, 926 F.2d 1355, 1360 (3d Cir.), cert. denied, 502 U.S. 956 (1991)). In such cases, "the co-conspirator's statements can be conditionally admitted into evidence, provided that the government establishes the existence of the conspiracy and each conspirator's participation therein before it closes its case." Id. However, to avoid a later problem at trial if the court conditionally admits a co-conspirator's statement and then the

28

government subsequently fails to meet its burden to admit the statement by showing that the statement was made in furtherance of the conspiracy, "district courts in some circuits have conducted pretrial hearings, referred to as 'James hearings,' to [first] determine the existence of a conspiracy." *Id.* (citing United States v. James, 590 F.2d 575 (5th Cir. 1979)).

"The United States Court of Appeals for the Third Circuit has never required district courts to hold a James hearing, and has cautioned that the procedure of conditionally admitting conspiracy evidence 'should be carefully considered and sparingly utilized by the district courts.'" *Id.* (citing United States v. Continental Group, 603 F.2d 444, 457 (3d Cir. 1979); *see also* Gambino, 926 F.2d at 1360–61; Ammar, 714 F.2d at 245–47). Regardless, a James hearings is not "mandatory." *Id.* (citing United States v. Williams, 264 F.3d 561, 576 (5th Cir. 2001) (stating that the decision to hold a James hearing is left to the sound discretion of the trial judge) ); *see also* Continental Group, 603 F.2d at 456 (Third Circuit held that "the order of proof at trial is a matter committed to the discretion of the trial judge.").

No doubt that this court's determination of whether a conspiracy existed only must be supported by slight evidence in order to admit co-conspirator statements. *See* United States v. Provenzano, 620 F.2d 985, 999 (3d Cir. 1980). Further, "[d]istrict courts of the Third Circuit have consistently held that Rule 16 does not provide for the discovery of a co-conspirator's statement." U.S. v. Cheatham, 500 F.Supp.2d 528, 538 (W.D. Pa. 2007) (citations omitted); U.S. v. Lewis, 511 F.Supp.3d 566, 579 (M.D. Pa. 2021)

(holding that "[the] longstanding consensus of district courts within this circuit is that statements of coconspirators are not discoverable under Rule 16."). Also, a James hearing may entail a mini-trial, and may also reveal the identities the CI's which, as discussed below, the government is seeking to protect.

The court also points out that "[w]ith regard to a charged conspiracy, [like Parfaite is charged in Count 1] it is not necessary for the government to disclose the precise details of the roles the defendant and his or her co-conspirators allegedly played in forming and executing a conspiracy, or all the overt acts the government will prove at trial in establishing the conspiracy." U.S. v. Mitchell, 2013 WL 12202650, *8 (W.D. Pa. May 6, 2013) (citations omitted). Further, "[i]t is [not] an element of 21 U.S.C. §846 ... that a defendant have committed an overt act in furtherance of the conspiracy." Id. at *20 (quoting United States v. Johnstone, 856 F.2d 539, 542 (3d Cir. 1988)). "In an indictment under 21 U.S.C. §846, it is not necessary 'to allege any specific act in furtherance of the conspiracy.'" U.S. v. Curtis, 2020 WL 3898983, *6 (M.D. Pa. July 10, 2020) (citation omitted). Additionally, "[a] conspiracy indictment need not allege every element of the underlying offense, but need only put defendants on notice that they are charged with a conspiracy to commit the underlying substantive offense." Mitchell, 2013 WL 12202650, *20 (citation omitted).

Thus, based on its discretion and based on its knowledge of the facts of this case from the briefs and the guilty plea hearing of co-defendant Luce,

the court will **DENY** Parfaite's motion for a pre-trial James hearing to determine the existence of a conspiracy and the admissibility of statements of alleged co-conspirators. *See* Grier, *supra.* Also, as mentioned above, the court will **DENY** Parfaite's motion insofar as it seeks pre-trial disclosure of co-conspirator statements based on its above ruling regarding his Rule 16 motions and, since the government has provided Parfaite with some of these statements and will make others available to him.

Moreover, since the government provided Parfaite with more than sufficient discovery information to prepare for trial, the court will **DENY** Parfaite's motion to the extent that he requests a list all overt acts committed in furtherance of the drug trafficking conspiracy.[5]

Parfaite also appears to move to compel the government to disclose any hearsay statements as an exception to the hearsay rule under F.R.E. 807 it will use at trial. Rule 807 is known as the residual exception. "The Residual Exception allows a hearsay statement to avoid exclusion by the

---

[5]The court will give the jury detailed instructions regarding a conspiracy as charged in Count 1 of the Indictment in this case, such as Third Circuit Model Criminal Jury Instructions, §6.18.371C, §6.18.371D (Membership in the Agreement: The government need not prove that a defendant knew everything about the conspiracy or that he knew everyone involved in it, or that he was a member from the beginning, and the government does not have to prove that the defendant played a major or substantial role in the conspiracy.), §6.18.371E, §6.18.371G, §6.18.371I, and §6.18.371K (The acts or statements of any member of a conspiracy are treated as the acts or statements of all the members of the conspiracy, if these acts or statements were performed or spoken during the existence of the conspiracy and to further the objectives of the conspiracy.).

rule against hearsay, even if the statement is not specifically covered by an exception in Rule 803 or 804, if certain criteria are established." Li, 2017 WL 590275, *5 (citing Fed.R.Evid. 807(a)). "A statement introduced under Rule 807 'is admissible only if, before the trial or hearing, the proponent gives an adverse party reasonable notice of the intent to offer the statement and its particulars, including the declarant's name and address, so that the party has a fair opportunity to meet it.'" Id.

At this time, the government does not indicate that it intends to offer a Rule 807 hearsay statement. However, the court will direct the government to provide Parfaite with the requisite pre-trial notice if it will seek to offer evidence under Rule 807. Thus, to the extent that Parfaite requests immediate notice, the request will be **DENIED**.

## 18. Motion for Identifying Information Regarding CI's:

Finally, as his last discovery request, Parfaite moves for the disclosure of identifying information regarding CW #1 and CW #2 claiming that they may have information relevant to the drug trafficking conspiracy count, Count 1. Insofar as Parfaite seeks the court to compel the government to identify all confidential informants upon which it relied, including CW #1 and CW #2, "[i]f a defendant sets forth a specific need for disclosure, the court must balance the public interest in protecting the flow of information against the individual's right to prepare his defense." Lewis, 511 F.Supp.3d at 580 (internal quotations and citations omitted). *See also* U.S. v. Buckner, 2020 WL 211403, *2 (M.D. Pa. Jan. 12, 2020) ("Prior to engaging in the Rovario

32

balancing test, the defendant has the burden of setting forth and establishing a specific need for disclosure of the identity of the confidential informant."). However, "[m]ere speculation as to the usefulness of the informant's testimony to the defendant is insufficient to justify disclosure of his identity." Lewis, 511 F.Supp.3d at 580 (citations omitted). Here, Parfaite only claims that disclosure of the confidential informants is needed to prepare a defense. However, as the government, (Doc. 47 at 62-63), points out:

> The defendant has failed to make th[e] [requisite] showing here. The Government, in August of 2021, provided a summary of the expected testimony of the confidential witnesses in this case. Defendant Parfaite nevertheless asserts that one confidential informant, CI #1, is an eyewitness to the alleged conspiracy charge, presumably because they made purchases of controlled substances from Parfaite's Motel 63 Room. Defendant Parfaite asks for the informant's information be provided because "there is exculpatory impeachment information about this witness that would cast doubt on his or her credibility which needs to be disclosed." Def. Brief at 27. This demand is unusual, in that in making this request, the defendant seems to know the identity of the Confidential informant already, hence [his] knowledge that he or she possesses exculpatory impeachment information. The Defendant also demands the identifying information of CI #2, on the basis that "he/she may lead to a first-hand source or circumstantial evidence." Id.

Parfaite provides no substantiated reason for seeking disclosure and production of the identifying information about the confidential informants, rather he relies only upon speculation. Parfaite has failed to state a specific need for the disclosure of the identity of the confidential informants and, thus his request will be **DENIED**. See Lewis, supra; Buckner, supra (citing, in part, United States v. Brown, 3 F.3d 673, 679 (3d Cir. 1993)) ("A defendant who

merely hopes (without showing a likelihood) that disclosure will lead to evidence supporting suppression has not shown that disclosure will be "relevant and helpful to the defense ... or is essential to a fair determination" of the case, Rovario, 353 U.S. at 60-61, 77 S.Ct. 623...."). Specifically, the court, in its discretion, will **DENY** Parfaite's request for disclosure of the identities of the confidential informants until immediately before their testimony at trial since the court finds that Parfaite will not be prejudiced since he can obtain information required for his defense from the numerous discovery items which the government has already provided him, and is obliged to continue to provide him under Rule 16. *See* Buckner, 2020 WL 211403, *4 (the court has "directed the Government to provide the defendant with any Rule 16 material which [has not yet been provided], and there is no indication that the Government will not continue to comply with Rule 16 in the future").

### 19. Motion *In Limine* to Exclude Photographs:

Parfaite also filed a motion *in limine* to exclude from evidence at trial the photographs taken by officers on February 23, 2021, after the execution of a federal search warrant at the Paramount Motel, Room #3, 2220 Milford Road, East Stroudsburg, Pennsylvania. Parfaite moves to exclude the photographs pursuant to Fed.R.Evid. 403 and 901 contending that they are not dated stamped and not authenticated, and that they are too prejudicial.

The government responds to Parfaite's motion *in limine* by stating that it "anticipates testimony from several federal agents and local law

34

enforcement investigators who were present in the room during the search of the motel room and while the photographs were taken", and that "[t]hese witnesses will establish the authenticity of the photographs and their relevance to this case." (Doc. 47 at 64). As such, the government contends that the court will be in a better position to decide whether to admit the photographs taken of Parfaite's motel room when its witnesses testify at trial. The court notes that there is no requirement in the federal rules of evidence that the photographs must be either time or date stamped.

The court will, however, **DEFER** ruling on Parfaite's motion *in limine* regarding the motel photographs until the time of trial. *See* United States v. Tartaglione, 228 F.Supp.3d 402, 406 (E.D. Pa. 2017) ("A trial court considering a motion *in limine* may reserve judgment until trial in order to place the motion in the appropriate factual context."). Additionally, evidence should rarely be excluded *in limine* pursuant to Rule 403 because "[a] court cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence." In re Paoli R.R. Yard PCB Litig., 916 F.2d 829, 859 (3d Cir. 1999).

The court will allow the government to present testimony and evidence regarding the photographs taken at the Paramount Motel on the date of Parfaite's arrest and, it will determine at that time if they are properly authenticated, whether they are admissible under Rules 401, 403 and 901, and whether the defendant's allegations concerning them were made to this court in good faith.

35

**20. Motion for Severance of Trial and Suppression of Co-Defendant Luce's Recorded Statements:**

As indicated, after Parfaite filed his pre-trial motions, his sole co-defendant in the Indictment, Luce, pled guilty. Thus, Parfaite's motion to sever his trial from Luce will be **DISMISSED AS MOOT**.

The government also had sought to introduce the post-arrest recorded statements of then co-defendants Parfaite and Luce at trial. It stated that "each defendant made inculpatory out-of-court statements against themselves and their co-defendant." The government submitted Parfaite's and Luce's unredacted post-arrest statements they made during their interviews with officers that were recorded. (*See* Doc. 48, Atts. A & B). No doubt that Parfaite is clearly inculpated by Luce's statements thus implicating Parfaite's 6th Amendment confrontation right with respect to the statements.

There will no longer be a joint trial with Parfaite and Luce since Luce has now pled guilty to all of the charges in the Indictment against him. Nonetheless, if Luce does testify at Parfaite's trial, then there will be no Confrontation Clause or *Bruton* issue since Parfaite's counsel will be able to cross-exam Luce and, for impeachment purposes, will be able to utilize Luce's post-arrest statements he made during his interview with officers that was audio and video recorded. (*See* Doc. 48, Att. A). "In Bruton v. United States, 391 U.S. 123-24, 88 S.Ct. 1620 (1968), the Supreme Court held that the introduction of a non-testifying defendant's out-of-court statement, which directly implicated his co-defendant by name, violated the Confrontation

36

Clause right of the co-defendant." <u>U.S. v. McLaughlin, 2013 WL 996266, *5</u> <u>(M.D. Pa. March 13, 2013)</u>. Thus, if Luce testifies at Parfaite's trial, there will be no *Bruton* violation since he will be a testifying co-defendant who will be subject to cross-examination.

However, if Luce does not testify, his recorded statements made to officers, both the unredacted and redacted versions, will not be admissible at Parfaite's trial since Luce is no longer a co-defendant in a joint trial with Parfaite and, Luce's statements will not qualify as admissible evidence under the hearsay exception as statements against Luce's penal interest.

Thus, the court will **DISMISS AS MOOT** Parfaite's motion to suppress Luce's recorded statements from being introduced at his trial.

## III.   CONCLUSION

Accordingly, Parfaite's 18 omnibus pre-trial discovery motions, **(Doc. 34)**, will be **GRANTED IN PART** and **DENIED IN PART**, to the extent specified above. The court will **DEFER** ruling on Parfaite's motion *in limine* to preclude the government from introducing into evidence the photographs officers took at the Paramount Motel until the time of trial.

The court will **DISMISS AS MOOT**, Parfaite's motion to suppress Luce's recorded statements from being admitted at his trial as violative of Bruton. An appropriate Order will follow.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: March 21, 2022**

21-56-02

38