IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 3:CR-21-056 |
| | : | |
| v. | : | (Judge Mannion) |
| | : | |
| WALTER KENNETH PARFAITE, | : | (Electronically filed) |
| Defendant | : | |

## PARFAITE'S SENTENCING MEMORANDUM

**I. Introduction**

On March 29, 2022, Parfaite was charged in a Superseding Information with one count of possession with intent to distribute 5 grams and more of methamphetamine in violation of Title 21, U.S.C. § 841(a)(1) and (b)(1)(B)(viii).

On March 31, 2022, Parfaite appeared before this Honorable Court and accepted responsibility for his criminal misconduct by pleading guilty to the Superseding Information.  As part of a written plea agreement, the parties agreed to recommend that under U.S.S.G. §2D1.1( c)(8) the base offense level is 24.

On July 21, 2023, the latest revision of the Presentence Report was disclosed.  On October 8, 2023, Parfaite submitted objections to the Presentence Report.

Parfaite is scheduled to be sentenced on November 15, 2023.

II. **Argument**

1. **Parfaite submits that a downward variance is warranted based upon disparity of sentences involving methamphetamine purity**.

The United States Sentencing Guidelines treats offenses involving methamphetamine differently based upon the purity of the substance. Pursuant to the drug quantity/conversion tables of the Guidelines, a person convicted of an offense involving *actual* methamphetamine is sentenced under a ***ten-to-one ratio*** compared against lower purity methamphetamine. United States v. Melendrez, (U.S.D,C, New Jersey 2022), 2022 WL 1192770.

In this case Parfaite is exposed to a longer sentence because of the purity of the methamphetamine. For instance, the parties agreed to recommend a base offense level of 24 which comports to a converted drug weight of at least 100 but less than 400 kilograms of marijuana. This weight is greatly based upon the drug conversion table's assessment of 20kg converted drug weight to 1 gm of actual methamphetamine.[1] If the converted drug weight was determined based upon the

---

[1] Using the Government's figures, (Doc. 122, p. 16), a converted drug weight of 256.4 kg results. 8gms heroin equals 8 kg converted drug weight. 11.8gms actual methamphetamine equals 236 kg converted drug weight. 6.2gms methamphetamine equals 12.4 kg converted drug weight.

drug equivalence for methamphetamine mixture, and not actual methamphetamine, a 2kg per 1gm of substance would apply which would result in a converted drug weight of at least 40 but less than 80 kilograms of marijuana.[2] Under these circumstances, the base offense level would be an 18 instead of a 24, and the sentencing guideline, after acceptance, would be 60 months, (41-51 months but pursuant to 5G1.1(b) the sentencing guideline is the mandatory minimum), instead of 77-96 months.

Parfaite respectfully requests that this Honorable Court reject the 10 to 1 purity disparity and vary downward based upon the application of the methamphetamine mixture Guideline.

Parfaite submits that this Court certainly has the authority to grant the requested downward variance in this matter[3]. In <u>Spears v. United States</u>, 129 S.Ct. 840 (2009), the United States Supreme Court had the occasion to review a district court's decision to replace the 100 to 1 quantity ratio for crack/powder cocaine offenses with its own 20 to 1 ratio. According to the Court:

> In *Kimbrough,* we held that "under Booker, the cocaine guidelines, like all other guidelines, are advisory only," (citations omitted), and that "it would not be an abuse of discretion for a district court to conclude when

---

[2] Using the Government's figures; 8gms of heroin is 8kg converted drug weight. 18gms of methamphetamine is 36kg converted drug weight. Total is 44 kg converted drug weight.

[3] The Government apparently agrees. (Doc. 122, p. 17)

>sentencing a particular defendant that the crack/powder disparity yields a sentence greater than necessary to achieve §3553(a)'s purpose, *even in a mine-run case.*"

Id. at 842.

Indeed, the Court went on to state that "the only fact necessary to justify such a variance is the sentencing court's disagreement with the guideline - its policy view that the 100 to 1 ratio creates an unwarranted disparity". Id.  In such circumstances a sentencing judge has not only the power to reject the disparity created by the crack-to-powder ratio but can even apply a different ratio which in his judgment corrects the disparity.  Id. at 843.

Parfait respectfully requests that the Court reject the disparity created the 10 to 1 ratio between actual methamphetamine and those substances containing a mixture that includes methamphetamine and impose a sentence in line with the methamphetamine mixture Guidelines range.  See, United States v. Celestin, (U.S.D.C. E.D. Louisiana 2023), 2023 WL 2018004. (No other drug is punished more severely based on purity than Methamphetamine).

In Celestin, Judge Morgan of the Eastern District of Louisiana joined with at least eleven other district courts across the United States in rejecting the disparity caused by the 10 to 1 Methamphetamine purity ratio and imposed a sentence based upon the Methamphetamine mixture guideline.  Id. at 12-13. According to the court, the 10 to 1 distinction is made because the Guidelines use

drug purity as a proxy for a defendant's culpability.

> The Guidelines state "the fact that a defendant is in possession of unusually pure narcotics may indicate a prominent role in the criminal enterprise and proximity to the source of drugs."
>
> U.S.S.G, §2D1.1, cmt. n.27©

The court went on to note that, in light of increasing purity levels in run of the mill methamphetamine cases[4], the purity disparity is no longer probative of a defendant's culpability[5]. Id. at 11. Further, the court found that there is no empirical basis for the 10 to 1 disparity between the actual methamphetamine and methamphetamine mixture guidelines. Id at 11, See United States v. Bean, 371 F. Supp. 3d 46, 51 (D.N.H 2019)(quoting *Kimbrough,* the Sentencing Commission did not exercise its institutional role and rely upon empirical date to develop the guidelines for drug-trafficking offenses).  In accord, see United States v. Melendrez, (U.S.D.C. NJ 2022), 2022 WL 1192770, United States v. Bean, 371 F.Supp.3d 46 (D.N.H. 2019), United States v. Hayes, 948 F.Supp.2d 1009 (N.D. Iowa 2013), United States v. Robinson, 2022 WL 17904534,

Here, Parfaite's criminal history exemplifies a drug user who commits

---

[4] Average purity between 2012 and 2017 was over 90%, citing statistics from the Drug Enforcement Administration's 2018 National Drug Threat Assessment.

[5] The purity levels have even risen since 2017, to wit, 2018 - 97.5%, 2019 - 97.2%. 2020 National Drug Threat Assessment. Https//www.dea.gov/documents/0202/03/02/2020.

offenses to get high. In this case, he had recently been released on parole when he succumbed to his lifelong addiction. Parfaite submits that he clearly is not a kingpin, or otherwise prominent member of any drug trafficking organization, and therefore to equate culpability with purity in this case would result in a gross sentencing disparity.

### III.  Conclusion

Based upon the foregoing, the Defendant Walter Kenneth Parfaite respectfully requests that this Honorable Court grant a downward variance from the sentencing guideline.

Respectfully submitted,

Date: November 7, 2023

 s/Gino Bartolai, Esquire 
**Gino Bartolai, Esquire**
**Attorney ID# PA 56642**

238 William Street
Pittston, Pennsylvania 18640
(570) 498-1135
E-mail: gbartolai@outlook.com
Attorney for Walter Kenneth Parfaite

# CERTIFICATE OF SERVICE

I, Gino Bartolai, Esquire, do hereby certify that I electronically served, via e-mail, a copy of the foregoing **Sentencing Memorandum,** to the following

>James M. Buchanan, Esquire
>Assistant United States Attorney

and by placing the same in the United States mail, first class, postage prepaid, at Scranton, Pennsylvania, addressed to the following:

>Walter Kenneth Parfaite

Date: November 7, 2023                    s/Gino Bartolai
                   **Gino Bartolai, Esquire**